The State v. Fulton.

---

THE STATE OF KANSAS, *Appellee,* v. ROY FULTON, GUY FULTON AND ED FULTON, *Appellants.*

No. 18,149.

.SYLLABUS BY THE COURT.

1. FALSE PRETENSES—*Information—Separate Counts—Value of Property.*   Upòn . an information charging distinct offenses in separate counts in obtaining property by means of false pretenses, the value of property obtained as charged in one count can not be added to the value of other property obtained as charged in another count in order to increase the latter to a sum sufficient to sustain a conviction for a higher degree of crime than would otherwise be shown.

2. ——— *Same.*   The evidence is examined and held insufficient to support the verdict.

Appeal from Allen district court. Opinion filed November 9, 1912. Reversed.

*A. F. Florence,* of Iola, *G. H. Lamb,* and *W. E. Hogueland,* both of Yates Center, for the appellants.

*John S. Dawson,* attorney-general, *S. M. Brewster,* special assistant attorney-general, *James S. Taylor,* county attorney, *H. A. Ewing, S. A. Gard,* and *G. R. Gard,* all of Iola, for the appellee.

The opinion of the court was delivered by

BENSON, J.: This appeal is from a conviction for obtaining property by means of false pretenses. A verdict of guilty was returned upon the three counts of the information, fixing the value of the property obtained upon each count at $20.48. After verdict the first and third counts were dismissed and judgment was pronounced upon the second count.

The second count charged that L. E. Foster had issued to Ed Fulton a coupon book entitling him to receive goods to the amount of $10 upon coupons contained therein; that the defendants, fraudulently conspiring together, procured false coupons, and representing that they were true and genuine ones contained in the book so issued by Foster, delivered the false coupons to him in exchange for merchandise and thereby, in pursuance of this corrupt conspiracy, obtained property of the value of $25. The other counts were the same except that they charged that coupon books were issued to Roy Fulton and Guy Fulton, respectively, and that merchandise was obtained upon false coupons purporting to have been contained in such books.

The appellants are brothers, and for two or three years had been customers of Foster, who is a retail merchant. He issued books to customers, among others to the appellants. These books contained detachable coupons representing values from one dollar

to one cent.  In making purchases the customer would present his book and detach and deliver, or the salesman would detach, coupons to the amount of the purchase.  Goods were delivered not only to the defendants personally but to members of their families who presented the coupon book.  The appellants had traded in this manner at the Foster store for some time and had purchased and used many like coupon books.  No account was kept of the goods sold by this method to the appellants until May 22, 1909.  From that date accounts of such sales were kept and the coupons presented by each of the appellants were preserved in separate envelopes.  On May 29, 1909, the last coupon book was issued to Ed Fulton.  On June 5, 1909, the last books were issued to Roy Fulton and Guy Fulton, respectively.  The evidence tends to prove that after these respective dates goods were purchased by appellants to the following amounts:  by Ed Fulton, $11.98; by Roy Fulton, $19.64; and by Guy Fulton, $13.06.  On the 19th of June, 1909, when the trading with the appellants was discontinued, coupons remained in Ed Fulton's book to the amount of $1.02, in Roy Fulton's book to the amount of eighty-one cents, and in Guy Fulton's book to the amount of $8.63.  Assuming that no coupons were used in that time from books previously purchased, these accounts show that the three persons received goods to the amount of $23.61 in excess of the amount of genuine coupons— if none of the goods were otherwise paid for.

It must be remembered that the count upon which Ed Fulton was convicted charges that the goods were delivered upon false coupons purporting to be taken from the particular book issued to him.  All the coupons purporting to come from this book, preserved and produced at the trial, together with those remaining in the book amount to $13.  It is conceded that $10 in amount of these were genuine, leaving but $3 in amount

11—88 KAN.

that can be held spurious. It can not be successfully claimed that the coupons purporting to be taken from the books issued to his brothers, respectively, and which are made the subject of distinct charges, can be added under this count to make up the amount found by the verdict. Each count charges a distinct offense relating only to coupons contained in the particular book specified therein without reference to other books. Upon this information the value of property obtained as charged in one count can not be added to the value of other property obtained by the means charged in another count, for the purpose of increasing the latter to a sum sufficient to sustain a conviction for a higher grade of offense than would otherwise be shown.

The evidence shows that the last coupon book issued to Ed Fulton before the one upon which the charge is based was delivered on May 6, 1909, and fails to show that all the coupons contained in it had been used or that the book or books previously issued had been taken up. The bookkeeper, who was a saleswoman in the store, testified:

"On the 6th day of May, 1909, we issued to him (Ed Fulton) a $10.00 book, and commenced to keep track of his purchases on the 22d day of May, 1909.

"Q. How much did he buy and pay for between that date and the 29th? A. Well, from the 22d day to the 29th he bought $5.94 worth.

"Q. Do you know whether or not he had been using coupons and trading during that time? A. Between the 6th and the 22d? No, I don't; I could n't say.

"Q. Well, when he got his book on the 29th had he traded out his book that he got on the 6th day of May or not? A. Well, I don't know. That he had no other coupon book from their store other than the one he bought on the 6th day of May, 1909; that his trade from the 29th day of May until the 19th day of June was $11.98."

It appears from the account kept with Ed Fulton that many coupon books were issued to him in the year

1908, and in the year 1909 before the one issued on May 6. The accounts with the other defendants also show that other books had been previously issued to them. Mr. Foster testified that he did not take up the old books and did not know whether they had any or not. With reference to Ed Fulton's account he testified, "I can't remember how much Ed traded at the store after he received the last $10.00 book, but he traded $11.98 and that during that time he had no book that I know of except the $10.00 book." Ed Fulton testified that while trading with Foster he had as many as three books at a time; that sometimes he would not have enough coupons in the book to last until the next pay day and he would have another one issued. Both the proprietor and bookkeeper testified that they could not identify any coupons claimed to be false from true ones contained in the books regularly issued, and none of those retained and kept in the envelopes referred to were identified as false. As other coupon books were issued to Ed Fulton before the one issued on May 19, 1909, and one at least was not taken up, and no account of purchases thereon were kept until May 22, it is impossible to perceive how, in the absence of any identification of any spurious coupons, it could be found that any were in fact used, or that Mr. Foster was defrauded as charged in the second count of the information. The evidence is therefore deemed insufficient to support the verdict.

In view of the result reached it is not necessary to consider alleged errors in rulings complained of.

The judgment is reversed with directions to grant a new trial upon the second count of the information.