No. 31,475

THE STATE OF KANSAS, *Appellee,* v. CARL A. RICHARDSON, *Appellant.*

(26 P. 2d 251.)

472

Opinion filed November 11, 1933.

C. M. *Williams,* D. C. *Martindell* and *W.* D. P. *Carey,* all of Hutchinson, for the appellant.

*Roland Boynton,* attorney-general, *Max Wyman,* county attorney, and *John Fontron,* both of Hutchinson, for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was a criminal prosecution wherein the defendant was convicted of embezzlement. He appeals.

Defendant was clerk of the district court for several terms. He retired from that office in January, 1932. At that time his books were audited. He lacked about $10,000 of having money enough to pay the amount that was charged to him as clerk. A more detailed examination was then had. In this examination specific cases were discovered where money had been paid to defendant and had not been paid by him to the persons who were entitled to it. This prosecution followed. The count upon which he was convicted was based on the failure of defendant to pay to the successful litigant the amount of a judgment which had been paid to defendant.

The first error of which defendant complains is that his motion to quash the information should have been sustained, because it failed to state an offense against any law of the state of Kansas, because each count was void for duplicity, and because the informa-

tion was not sufficient to inform him of the nature of the offense charged against him.

The count of the information in which we are interested is as follows:

"I, the undersigned, county attorney of said county, in the name and by the authority and on behalf of the state of Kansas, give information that on the 12th day of January, A. D., 1931, in said county of Reno and state of Kansas, one Carl A. Richardson, then and there being, did then and there unlawfully, feloniously and willfully, while acting in his official capacity as the clerk of the district court of Reno county, Kansas, embezzle, convert to his own use, take, make away with and secrete, with the intent to convert to his own use, without the assent of his employer or employers, approximately the sum of $611.52, of the value of approximately the sum of $611.52, good and lawful money of the United States of America, which said money or property was received by the said defendant, Carl A. Richardson, in his official capacity as clerk of the district court of Reno county, Kansas, and which said office the said Carl A. Richardson held from January 13, 1917, to January 12, 1931, which said sum was paid to the said Carl A. Richardson on the 25th day of March, 1926, by the Walker Grain Company and is the property of D. W. Ghormley or his son, —— Ghormley, and should be in the custody of the said Walter A. Mead as the clerk of the district court of Reno county, Kansas, in case No. 17046, then and there pending in the district court of Reno county, Kansas, which said sum the defendant, Carl A. Richardson, failed and neglected to account for to his successor in office, Walter A. Mead, who is and was the duly elected, qualified and acting clerk of the district court of Reno county, Kansas, since the 12th day of January, 1931, and which embezzlement was concealed by the said defendant, Carl A. Richardson, and was not discovered until on or about the 10th day of March, 1931. Contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the state of Kansas."

The prosecution was had for a violation of R. S. 21-545. That statute, in so far as it relates to public officers, is as follows:

"Any officer of this state or any county, township, city, board of education or school district or road district therein, or any receiver appointed by any court or judge in this state, who shall embezzle or convert to his own use, or shall take, make away with, or secrete, with intent to convert to his own use . . . any money, . . . bank bills, treasury notes, goods, rights in action or valuable security or effects whatsoever, belonging to any such . . . state, county, city, board of education, township or school district, or road district, or the beneficiary of such trust fund, or being a part of the funds, assets or property of such receivership, which shall have come into his possession or under his care by virtue of such employment, office, or trust, shall upon conviction thereof be punished . . ."

The argument as to duplicity is that the information charges defendant "did embezzle and convert to his own use" and second

"did take, make away with and secrete with the intent to convert to his own use" without the consent of his employers. To meet the complaint of defendant the prosecutor could have made two counts instead of one out of the above language. We fail to see where this would have helped the defendant. Long ago this court held that where different criminal acts have been committed by the same person at the same time they might be coupled together in a single count as constituting a single offense. The court said:

"In such cases each one of the acts may be considered as representing a step or stage in the same offense, and all combined may be set forth in the same count and treated as a single violation of law." (*State v. Meade,* 56 Kan. 690, 693, 44 Pac. 619.)

See, also, *State v. Briggs,* 74 Kan. 377, 86 Pac. 447; *State v. Sherman,* 81 Kan. 874, 107 Pac. 33. There can be no doubt that the embezzling, converting, taking, making away with and secreting were all performed by defendant and occurred at the same time and as part of the same transaction.

The argument that the information should be quashed because it did not inform defendant of the nature of the offense charged against him is that under the statute in question and the information the defendant could not tell whether he was charged with committing the crime on March 25, 1927, the date when the money in question was paid to defendant as clerk, or on January 12, 1931, the date when he failed to turn the amount to his successor. When the language of the information is examined in connection with the statute, however, we have no difficulty in discovering that the state intended to prove just what it was that happened, that is, that the sum of money was paid to defendant, and that he did not do the only thing with it he could do under the law—pay it to the person who was entitled to it. The defendant cannot be heard to complain because some explanatory statements were set out in the information, the effect of which was to inform him of the exact transaction upon which the state expected to rely.

The argument that the information did not state any offense against the laws of the state of Kansas is that the information charged the defendant with embezzling a sum of money which was the property of D. W. Ghormley or his son, and that a public officer can only be convicted of embezzling public funds.

Here again we must examine the entire information and the statute. When we do this we see that the information describes

exactly what was done. It is true the fund in question was the property of Ghormley when it was paid to the defendant as clerk, but while it was in the hands of defendant he held it as a public fund. The statute treats moneys so held as a trust fund which the officer holds for the benefit of the person entitled to it. (See *Sias v. Territory*, 11 Ariz. 175; also, *State v. Woodbury*, 132 Kan. 22, 294 Pac. 928.) The act condemned by the statute is the converting of the money to his own use by the defendant. The embezzlement did not consist of the failure to turn the money over to his successor. That was the final act which made the discovery of the embezzlement inevitable. It took the failure to account for the money, together with the withdrawal of money equal to the amount charged to have been embezzled, to constitute the commission of the crime. For this reason it cannot be said that the only thing charged here is a failure to turn over the money, and that this is not an offense on the part of an officer under R. S. 21-545.

The defendant argues that the evidence was not sufficient to support a conviction of embezzling this particular fund. The evidence was that when the final audit was made the defendant lacked about $10,000 of having money enough to pay the amount charged to him. It was proven that he kept the money in a certain bank, and that from time to time during a long tenure of office he had drawn on this fund for his own personal benefit. He attempted to account for these checks by claiming he thought he was entitled to certain fees that were deposited with the fund. Evidently the jury did not give credence to the story about fees. There was about $5,000 paid by defendant to his successor when he left the office. As has been stated heretofore, this left about $10,000 that defendant was unable to pay.

The argument of defendant is that for all that the evidence of the state proved, the sum the defendant was charged with embezzling was included in the $5,000 paid over. The answer to that argument is that when defendant turned over the office to his successor he turned over $5,199.45, and at the same time turned over a list of cases with each case specified by number and with the amount of money due set opposite each case. The amounts added up equaled the amount of the check. The case in which was paid the amount defendant is charged with embezzling was not on the list. This amounts almost to an admission that this particular amount was not turned over because it had been used by defendant.

Defendant objects to the introduction of several checks that he had drawn on his official fund for his personal use. He argues that he should have been charged with the embezzlement of the amounts of these checks instead of the amounts paid to him in specific cases, but that since he was not so charged the checks were incompetent and prejudicial. The checks were introduced as a means of showing the manner in which defendant handled the bank account in which the money he was charged with embezzling was carried. They were competent for that purpose. They were admissible for the purpose of showing the intent and plan or system by which defendant carried on his affairs. (See *State v. Robinson*, 125 Kan. 365, 263 Pac. 1081, and cases there cited.)

After the jury had been in deliberation about three days the following colloquy occurred between the trial judge and the jury:

"By THE COURT: You wanted to ask me a question you said?

"By JUROR AYRES: We would like to ask whether it is for the jury to decide or whether it is the law, when Mr. Richardson testified he thought these checks for $270 on November 13, 1929, and $456 on October 1, 1930, were copy fees, after the supreme court had decided he wasn't entitled to those fees.

"By THE COURT: Now, what is the question itself?

"By JUROR AYRES: The question we want to know is whether we are to decide whether that is embezzlement, or whether the law has decided that?

"By THE COURT: That is for you to decide, under all the facts and surrounding circumstances. Was there any other questions?

"(No response.)"

Defendant argues that it was error for the trial court to so instruct the jury. The jury had been fully instructed by the court on all phases of the case. There was no other answer for the court to make under the circumstances.

Sometime after this colloquy occurred the court gave the jury an instruction which defendant argues amounted to a direction by the court for the minority of the jury to yield to the majority, and was erroneous.

This instruction was given in the case of *State v. Rieman*, 118 Kan. 577, 235 P. 1050. The court said:

"The court gave to the jury the instruction approved in *Commonwealth v. Tuey*, 8 Cush. (Mass.) 1. To the instruction the court appended an admonition, clearly and forcibly restating the matter carefully expressed at the beginning. Guarded in this way, the instruction contravened no decision of this court, and there is no reason to believe it was prejudicial." (p. 582.)

We do not regard the giving of this instruction as of sufficient

gravity to warrant a reversal, since the record does not permit this court to entertain any misgivings as to the correctness of the result. However, we have reached the conclusion that it is not a well-chosen, careful statement of the law. It places an undue emphasis on the duty of the minority of the jury to yield to the opinion of the majority. The rule is that each member of the jury should pay attention to and consider the opinions, arguments and statements of the other jurors to the end that he may reach the conclusion that to him seems the correct one.

Other instructions are criticized by defendant, but we see nothing wrong with them.

The judgment of the trial court is affirmed.

HUTCHISON, J., not sitting.