No. 33,183

THE STATE OF KANSAS, *Appellee*, v. ROLAND H. GORDON, *Appellant*.

(68 P. 2d 635)

Opinion filed June 12, 1937.

*A. D. Weiskirch, Jr.,* of Topeka, for the appellant.

*Clarence V. Beck,* attorney general, and *Lester M. Goodell,* of Topeka, for the appellee.

The opinion of the court was delivered by

THIELE, J.: Defendant, who had been the clerk of the court of Topeka, was charged with embezzling funds coming into his hands

in his official capacity. He was found guilty and appeals to this court, specifying alleged errors, which will be discussed.

The information on which defendant was tried charged in substance that on the ———— day of October, 1935, defendant did unlawfully, feloniously and willfully embezzle and convert to his own use money belonging to Shawnee county, Kansas, of the value of $21, defendant being then and there the duly elected, qualified and acting clerk of the court of Topeka, and which money had come into his possession and under his control by virtue of his office.

Defendant first complains that his motion to require the state to furnish a bill of particulars should have been sustained. The basis for this complaint seems to be that as clerk there came into his hands not only moneys paid into court by judgment debtors for the benefit of judgment creditors, but also costs, some of which would go to witnesses or jurors, or to Shawnee county, and that the information, without a bill of particulars, was not sufficient to advise him of whose money he was charged with taking. In connection, reference is made to what the evidence subsequently taken showed. That it is not to be considered in that connection is apparent if for no other reason than that the rulings were made before the cause went to trial. The information sought by the bill of particulars was the ownership of the moneys embezzled, and whether they were taken at one time or over a period of time, and if at different times the dates and amounts of the taking. It will be noticed that the information charged the taking to have been on "the ———— day of October" and that moneys taken belonged to Shawnee county, Kansas, and came into defendant's hands in his official capacity as clerk. Although the information is definite, the argument centers on who owned the moneys alleged to have been embezzled. In *State v. Smith,* 13 Kan. 274, it was said:

"The public at large can exercise no constant supervision over his [county treasurer's] acts, nor can it, like a private individual, assume the direct custody of the funds at any moment. The proper authorities may require him to account, may examine the funds in his possession, but in the next hour all these funds may be changed, long before the act of embezzlement is done, or the intent is formed. To suppose that the legislature, when they added the large class of public officers to those who might be amenable to the law for the offense of embezzlement, intended to require proof of the identity of the money embezzled, or a description of it, and from whom it was received, is to infer that they intended to enact a law the enforcement of which would be impossible. It will not do to permit an artificial rule of pleading, having a doubtful foundation in reason, to lead to such a disastrous result." (p. 295.)

Without regard to what the evidence subsequently showed, it has been held that the moneys coming into the hands of a public officer, such as defendant here was, are held by him as a public fund, and when he converts them to his own use he violates the statute. (See *State v. Woodbury,* 132 Kan. 22, 294 Pac. 928, and *State v. Richardson,* 138 Kan. 471, 26 P. 2d 251.) It was not of consequence in determining defendant's guilt whether the specific funds taken would ultimately have gone to witnesses, jurors or the state of Kansas. The question of whether separate acts may constitute one offense is hereinafter discussed. In *State v. Miller,* 90 Kan. 230, 133 Pac. 878, it was held that—

"The matter of requiring a bill of particulars in a criminal case is discretionary and when no abuse of discretion is shown no error is committed in refusing such bill." (Syl. ¶ 3.)

And the rule there announced was followed in *State v. Millhaubt,* 144 Kan. 574, 579, 61 P. 2d 1356. We are of opinion that defendant was not entitled as a matter of right to have his motion for a bill of particulars sustained, and that the trial court did not abuse its discretion in denying the motion.

The defendant also complains that his motion to quash the information was not sustained. The grounds of this complaint are about the same as those advanced with reference to his motion for a bill of particulars. The information followed the language of the statute, charged a public offense and was sufficiently definite to inform the defendant of the charge against him.

Defendant's complaints that the trial court erred in overruling his demurrer to the state's evidence, and in giving instructions, are all predicated on a claim that the evidence failed to show that on any particular day defendant took and converted to his own use any sum of money in excess of $20, and that at most it only showed defendant committed a series of misappropriations, each of less than that amount, and that the trial court erred in advising the jury that such a series of misappropriations constituted one offense.

The defendant offered no evidence. The state's evidence showed that defendant took office January 9, 1933, and while serving his second term resigned October 18, 1935. On taking office, he received from his predecessor $9,048.90, and during his period of office he received $41,985.87, making a total of $51,034.77. During that period he paid the county treasurer sums due the county amounting to $17,062.70, and to third persons for judgments, costs refunds, wit-

ness and juror fees, etc., the sum of $28,921.45, and for bank service charges $7.02, or a total of $45,999.17, leaving him charged with a balance ·of $5,043.60, when he resigned. Actually he had cash on hand and in the bank amounting to $736.44, and failed to account for the remainder of $4,307.16. Of this amount, at least $3,100 belonged to Shawnee county. It was also shown that from January 13, 1935, to October 18, 1935, defendant received $2,213.28 which did not get into his bank account. When he resigned he was in default three months in his reports and payments to be made to the county treasurer. In order to determine the amount of the shortage, defendant's books were audited. The auditor was not able to state that defendant misappropriated to his own use $21 on any day in October, 1935, nor to tell that on any day during his term of office that he took over five dollars, nor could he tell from his audit how much defendant took on any particular day, nor to whom, that is, county, witness, juror, and so forth, it belonged, and he stated that such information could not be determined from defendant's books. The judge of the court of Topeka testified that on October 17, 1935, defendant admitted that he had used money of the court; that he was short one to two thousand dollars, but not over the latter figure, and that he had been taking money in small amounts for two years; that he had not taken over ten to fifteen dollars at one time. The judge was not able to state, either from conversations with defendant or from his own personal knowledge, that defendant had taken any sum in excess of $20 at any one time. A newspaper reporter also testified he had a conversation with defendant in which he admitted he had taken one to two thousand dollars in about two years and ten or fifteen dollars at a time.

At the close of the state's case defendant demurred on the ground the evidence did not prove defendant had embezzled money belonging to Shawnee county. The question whether each taking constituted a separate offense, or whether the series of takings constituted one offense, could not be raised by demurrer as was here attempted, for it was undisputed that defendant had committed embezzlement. Whether the offense was a felony or a misdemeanor was dependent on whether each taking constituted a separate offense or whether the series of takings constituted one offense, for in one of the two ways the amount taken was to be determined; but in either view of the matter, defendant's guilt was not determined, but only the degree of the offense committed. The demurrer was properly overruled.

Before discussing the instructions complained of, we pause to note the requested instruction which the trial court refused to give. Its effect was that the moneys coming into the hands of the defendant as clerk of the court for witness and juror fees, and for judgments for litigants, did not belong to Shawnee county but to the respective parties. What has been said with reference to the request for a bill of particulars as to this point is pertinent on the question of the correctness of this instruction and need not be repeated. The trial court did not err in refusing to give the requested instruction.

The first instruction complained of was to the effect that under the statutes the clerk of the court is to make certain charges for services rendered in that court, and the fees, when collected, become the property of Shawnee county and must be deposited by him with the county treasurer. It will be observed this instruction refers only to such fees as the clerk is required to collect for services rendered by him. It has no reference to anything else. The instruction was correct, and the giving of it was not error. The second instruction was to the effect that if the jury found the defendant committed a series of misappropriations of funds coming into his hands as clerk of the court, then and in that event such series of misappropriations constituted but one offense. No other instructions are abstracted, and we are not advised whether others defining intent to convert, scheme or plan of operation, etc., were given. There is no complaint but that other instructions were proper, and in the absence of any claim to the contrary, we must assume the jury was fully and properly instructed.

Defendant calls to our attention *Storm v. Territory,* 12 Ariz. 26, 94 Pac. 1099, wherein it was held that embezzlement is not a continuing offense but is one in which each misappropriation is a separate offense, as well as decisions from other jurisdictions to like effect, although he concedes that some states, said to be in the minority, hold adversely. In support of his contention that the rule in Kansas should be the same, three cases are cited: *State v. Bursaw,* 74 Kan. 473, 87 Pac. 183; *State v. Fulton,* 88 Kan. 159, 127 Pac. 526; *State v. Finney,* 141 Kan. 12, 40 P. 2d 411.

The Bursaw case was a prosecution under the intoxicating liquor law, where it was held that each of several sales to the same persons, being independent and distinct from the others, was to be regarded as a separate sale even though the sales were made successively in a short period of time.

In the Fulton case, *supra*, the prosecution was for obtaining property by false pretenses by three brothers by use of coupon books issued by a merchant alleged to have been defrauded. Space forbids a detailed statement, but in separate counts it was charged that books were purchased by one of the brothers; that false coupons were procured and used, and that each brother procured goods of stated values. Each brother was found guilty on all three counts, but after verdict two counts were dismissed and judgment pronounced on the third. On appeal this court held that it could not be successfully claimed that the coupons purporting to be issued to the brothers, respectively, and which were the subject of distinct charges, could be added together to make up the amount found in the count relied on; that each count charged a distinct offense, and that the value of property found in one count could not be added to the value of the property charged in another count for the purpose of increasing the latter to a sum sufficient to sustain a conviction for a higher grade of offense than would otherwise be shown.

The Finney case was a prosecution for embezzlement under the banking act (G. S. 1935, 9-140), an essentially different offense than that under which appellant was prosecuted (G. S. 1935, 21-545). In that case it was held that when a bank president converts the funds of the bank to his own use with no right to do so, he has defrauded the bank and is guilty of embezzlement.

The converse of the rule relied upon by the defendant is that "An embezzlement may consist of a continuous series of conversions, or of the conversion of money or property received at different times from different sources" (20 C. J. 429), and with reference to the proof, that—

"The aggregate amount of a continuous series of conversions at different times and in different amounts may be proved to make up the amount charged." (20 C. J. 479.)

In Wharton on Criminal Procedure (10th ed.), § 598, page 780, it is said:

"In those cases where the circumstances are such that, unless the prosecution is allowed to aggregate a continued systematic peculation on the part of an agent or employee, it might be impossible to secure a conviction, because the separate and distinct acts of conversion may not be susceptible of direct proof, the conversions may be charged in a lump sum without being duplicitous, and proof of such continued taking made. Thus, if one commits an embezzlement by a series of transactions, from day to day or month to month, a charge of embezzlement on a single day will cover and admit evidence of the whole.

An information charging that the accused on the fifteenth day of August, 1900, and on divers dates and days from thence continuously to the tenth day of January, 1901, did then and there convert to his own use certain moneys amounting in the aggregate to a named sum, is not defective for duplicity, but charges one continuous offense.

*"Public officer charged with embezzlement of small sums* of money received by him in virtue of his office and position, consisting of a series of continuous peculations, an allegation of a particular gross amount is held by the weight of authority to be good and sufficient. Thus, a public officer charged with the embezzlement of one hundred and sixty-five dollars paid in for hunters' licenses in sums ranging, under statute, from one dollar to fifty dollars, is not duplicitous in that it charges more than one offense."

The general question whether distinct acts constitute distinct crimes, or may be considered as parts of one crime, has been before this court a number of times under varying circumstances. In *State v. Meade,* 56 Kan. 690, 44 Pac. 619, defendant was charged with obtaining property by false pretenses. There the information charged the various steps in detail, and it was contended that some of the steps in and of themselves constituted crimes. In discussing whether all steps might be combined and treated as a single offense, it was said:

"The acts mentioned are connected with the same general offense, and under section 94 of the crimes act are punishable separately as distinct crimes when they have been committed by different persons or at different times. However, when they have been committed by the same person at the same time, they may be coupled together in a single count as constituting a single offense. In such cases each one of the acts may be considered as representing a step or stage in the same offense, and all combined may be set forth in the same count and treated as a single violation of law." (p. 693.)

A case more in point is *State v. Ricksecker,* 73 Kan. 495, 85 Pac. 547, where defendant was charged with embezzlement. There the information charged three counts, one for the total amount of embezzlement coupling with it concealment of the crime, the second for a lesser amount and intended to cover only the period within the statute of limitations, and the third for the entire amount, on the theory the statute did not start to run until demand had been made. A motion to require the state to elect upon which count it would rely was denied. The jury returned a verdict finding defendant guilty as charged in the information and finding the amount to be less than charged in any one count. This court held that three offenses were not charged, only that there were three different ways of stating the same offense. We are concerned principally with that portion of the opinion reading:

"It is contended in behalf of the defendant that he should have been granted a new trial because under the whole evidence if he was guilty at all he was guilty of several distinct acts of embezzlement, inasmuch as he was under a duty to turn over to the city at stated intervals the public funds then in his hands. The mere failure to perform this periodical duty, however, did not of itself render him guilty of a criminal offense. It is possible that he did upon several different occasions wrongfully convert to his own use the money then in his possession, but the evidence is consistent with the view that there was no criminal intent, and consequently no crime, until the entire missing amount had accumulated, and that he then wrongfully by one act embezzled the entire sum. This feature of the case appears to have been sufficiently covered by the instructions, and we are unable to perceive that the defendant has any just cause of complaint in connection therewith." (p. 501.)

In *State v. Hall*, 111 Kan. 458, 207 Pac. 773, the charge was grand larceny. Reference is made to the opinion for the facts, but it was there held:

"The stealing of several articles upon different floors of a department store during one visit of the defendant thereto may properly be charged as a single offense in one count of an information. And it is held that the evidence justified a finding that the articles here involved were taken without the defendant having left the building." (Syl. ¶ 1.)

In the case before us, the defendant failed to deposit the full amount of his receipts in his bank account, but the auditor was not able to state that on any particular day the defendant took any particular amount, but that from January 13, 1935, to October 18, 1935, he failed to account for $2,213.28. In that period of time, excepting Sundays, and assuming there were no holidays or other days on which his office would be closed, there were 239 days. It can readily be seen that if he took approximately the same amount every day, the average would be less than ten dollars. And it can just as readily be seen that unless the takings were made regularly at the rate of one in two days and of substantially identical amounts, more than one particular taking would have had to exceed twenty dollars in amount. If the practice was to take a series of amounts so that no one taking exceeded twenty dollars, it would be a fair inference from the evidence that the takings were the result of a scheme or plan. On the other hand, it might be inferred that the takings, while numerous, were, as to any particular one, without intent to convert the money to defendant's own use, and that it was not until some later date, when there had been a series of takings, that there was intent to convert. While the failure of the defendant to make monthly settlements with the county treasurer is not defined as a crime

(*State v. Ricksecker,* and *State v. Richardson,* supra), yet when the defendant resigned on October 18, 1935, he had an absolute duty to account to his successor for the amount which should have been on hand, and assuming that the taking and intent were coincident on that date, there can be no doubt a crime would then have been committed, and the evidence here, while tending perhaps to a contrary view, would warrant the conclusion that intent to appropriate to his own use by the defendant was shortly before he confessed his delinquency and resigned from office.

In *State v. Evans,* 143 Kan.. 29, 53 P. 2d 789, defendant was charged with embezzlement under such circumstances that demand was necessary. It was there said:

"It is the law that the crime of embezzlement is committed when one who is entrusted with the money or property of another fails to have it forthcoming on the lawful demand of the person to whom it belongs. This is a rule of necessity. The state could never show at what particular instant of time or in what particular locality any wrongdoer conceived and put into execution his wicked design of appropriating to his own use the money or property entrusted to his keeping." (p. 31.)

In the case before us the defendant offered no evidence, and it stands undisputed that at various times he appropriated amounts of from ten to fifteen dollars, and within the last ten months took over $2,200. Defendant may have conceived that separate takings of less than $20 each subjected him only to punishment for misdemeanors. But the evidence also warrants the conclusion that the series of takings was the result of plan or scheme and that each separate taking was but a step in the consummation of the whole scheme. And in ruling on defendant's demurrer to the state's evidence, the trial court stated clearly that the case was prosecuted on that theory. As has been stated, defendant abstracts only the instructions of which he complains. In the absence of any showing or claim to the contrary, we assume the trial court properly instructed the jury on that theory. We are of opinion the instructions complained of were not erroneous or prejudicial.

In connection with his claim the trial court erred in sentencing him and in denying his motion for a new trial, defendant reiterates his contention that the evidence shows that each misappropriation was complete in itself and constituted a separate offense. What has been said disposes of the contention. We hold the trial court did not err in sentencing defendant and in denying his motion for a new trial.

In connection with all assignments, both the defendant and the

state have cited authorities from other states. They have been examined but are not referred to, as we believe the matter is controlled by our own decisions herein mentioned.

The judgment of the trial court is affirmed.

WEDELL, J. (dissenting): I dissent from the view of the majority which holds that the state may charge a man with the embezzlement of $21 on the —— day of October, 1935, and that upon failure to prove the conversion of a felonious amount on that or any other single day, the state will be permitted to aggregate various smaller amounts converted on previous separate and distinct occasions in order to raise the amount to a sum sufficient to constitute a felony. That is the clear import of this decision. In this opinion I am not discussing the question of what might possibly be done under the procedure of other states, under certain circumstances; I am discussing the information under which this defendant was charged, tried and convicted and on a state of facts concerning which there is no dispute.

In my judgment the opinion of the majority is fundamentally unsound. That defendant was proven guilty of a misdemeanor cannot be doubted. That defendant was not shown to have been guilty of a felony is so patent it scarcely requires argument. That defendant was not tried on the theory that he embezzled the total lump sum of all his shortages, on the day he resigned, and on which day he was, of course, required to account for the balance of funds, is conclusively shown by the state's own evidence. The evidence showed he converted the total amount, not on that day but on numerous days prior to the date of October 21. Furthermore, the opinion of the majority admits that failure of defendant to make settlement with the county treasurer did not constitute the crime of embezzlement. (*State v. Ricksecker,* 73 Kan. 495, 85 Pac. 547; *State v. Richardson,* 138 Kan. 471, 26 P. 2d 251.)

Furthermore, the suggestions that this lawsuit may have been tried on the theory of a previously conceived plan to subsequently convert, on various occasions, amounts less than that which would constitute a felony, are completely and conclusively refuted by the information filed. It definitely alleges, in substance, that on the —— day of October, 1935, defendant unlawfully, etc., converted to his own use money of the value of $21. If it be true that such an intent had existed, then when that intent was executed by the conversion of an amount less than $20 the crime was complete and each

and every one of such conversions constituted a separate and distinct offense and was punishable as such. (*State v. Finney,* 141 Kan. 12, 40 P. 2d 411, and cases there cited.) Each was a misdemeanor and not a felony. To illustrate we may choose some arbitrary dates and amounts. Evidence required to convict defendant of an embezzlement of $10 on October 1 clearly would not convict for the embezzlement of $15 on October 16, nor would a conviction for the latter offense constitute a bar to a prosecution of the former, the reason being no identity of offenses existed. (*State v. Schmidt,* 92 Kan. 457, 140 Pac. 843; *State v. Ragan,* 123 Kan. 399, 256 Pac. 169; 8 R. C. L. 143, 144, 151; *State v. Finney,* supra.) There was no evidence defendant had previously determined to embezzle any definite or indefinite amount on any given future date or dates. Hence there was no basis for instructions on such a theory under an information which was plainly not drawn on any such theory. Let us assume, however, without any evidence to support the assumption, that this was defendant's intention and that such intention was previously formed. The mere fact defendant had, previous to October 1, determined he would embezzle $10 on October 1, and $15 on October 16, such previous intention would not permit the state to combine two separate and distinct offenses and thus convict defendant of a felony; that is, of having embezzled $25 on October 16. For clarity, we may put it another way. Supposing defendant, in keeping with the formation of a previous intent, had embezzled $25 or any other amount constituting a felony on October 1, and another $25 on October 16, and was thus prosecuted on those two counts, could it be logically contended in his defense that he had committed only the single felony of embezzling $50 on October 16? Certainly not. These felonious offenses are no more separate and distinct than the separate misdemeanors proved in the instant case.

The majority opinion calls attention to the fact that the Finney case was a prosecution for embezzlement under the banking act (G. S. 1935, 9-140), and that it was an essentially different offense than that under which defendant in this case was prosecuted. (G. S. 1935, 21-545.) No distinction, however, is made nor can it logically be made, as the author of this opinion views the subject, on the precise question of whether the several separate and distinct conversions of funds can be combined to constitute one offense.

The majority opinion refers to a statement from Wharton on Criminal Procedure, which appears to permit a charge of conversion

in a lump sum where the circumstances are such that, unless the prosecution be permitted to aggregate a continued systematic peculation on the part of a defendant, it might be impossible to secure a conviction because the separate and distinct acts of conversion may not be susceptible of direct proof. A sufficient answer to that statement is that such were not the circumstances in this case. There was evidence in the instant case of defendant's own admissions that he had converted funds to his own use for two years in small amounts not exceeding $10 to $15 at one time. No one can doubt that an information properly drawn on the basis of those facts would fail to support a verdict of at least one misdemeanor.

Time will not permit further treatment of the subject. With due deference and with utmost respect to the views of the majority, I am obliged to dissent from paragraph three of the syllabus and corresponding portion of the opinion.

SMITH, J., joins in this dissent.