**MERMIS v. JACKSON, Clerk of Court.**
No. 1519.

Circuit Court of Appeals, Tenth Circuit.
Dec. 6, 1937.

E. J. Malone, of Hays, Kan., for appellant.

T. F. Railsback, of Kansas City, Kan. (Andrew F. Schoeppel, of Ness City, Kan., on the brief), for appellee.

Before LEWIS, PHILLIPS, and BRATTON, Circuit Judges.

PHILLIPS, Circuit Judge.

Laura M. Jackson, as clerk of the district court of Ness County, Kansas, brought this action against the First National Bank in Ness City, Kansas, Richard A. Mermis, receiver of the bank, and The Central Trust Company of Topeka, Kansas, to recover three United States bonds, of the aggregate face value of $2,500.00, with unmatured interest coupons attached thereto. The cause was originally commenced in the district court of Ness County and was duly removed to the District Court of the United States for the District of Kansas.

On August 22, 1935, the attorneys for the bank, the receiver, and the clerk, respectively, filed in the cause an agreed statement of facts wherein it was stipulated:

That the bank is a defunct national banking corporation now in liquidation;

that Mermis is the duly appointed, qualified and acting receiver thereof; that Laura M. Jackson is the duly elected, qualified and acting clerk of the district court of the Thirty-third Judicial District in and for Ness County; that as such clerk she has received from time to time "fees, funds and moneys, as is required of the clerks of the District Court within the * * * State of Kansas"; that on February 4, 1933, she had on deposit with the bank the sum of $2,933.44; that on or before the last mentioned date the bank procured the bonds referred to above, to use "as security for the deposit of public funds for the clerk of the District Court of Ness County, Kansas"; that such bonds were deposited with the Trust Company in its trust department for the security of the clerk of the court of Ness County, Kansas, and that the Trust Company issued its receipt therefor; that the amount of funds on deposit to the credit of the clerk in the bank on March 4, 1933, the date the bank suspended business, was $2,996.41; that two dividends had been paid thereon, leaving a balance in the deposit of $1,850.29.

On May 4, 1935, the Trust Company filed its answer wherein it admitted custody of the bonds, alleged that the receiver and the clerk made conflicting claims thereto and prayed that it be permitted to deliver the bonds into the custody of the court to abide its judgment.

On January 29, 1936, the receiver and the bank filed an answer and cross-petition in which they set up that the bank was without authority to pledge its assets to secure the deposit of the clerk; that the attempt to pledge the bonds was unlawful and ultra vires; that the receiver had demanded the bonds from the Trust Company; and that the Trust Company had refused to deliver them to him.

Trial by jury was duly waived and the cause was submitted on February 1, 1936.

On February 26, 1936, the parties entered into a further stipulation to the effect that Laura M. Jackson took her office as clerk on January 10, 1933.

On March 5, 1936, the receiver filed an application to amend the stipulation of facts. This application sought to have the word "public" stricken from the portion of the agreed statement of facts last quoted above; and stated:

"The true facts are that said funds in the hands of said clerk at said time were not all public funds, and that only a small portion of said funds were public funds; such as, unpaid tax money, fees due the Secretary of State, or the State Treasurer, or the United States Government, and that all other funds were private funds, the property of litigants."

On March 9, 1936, the clerk filed objections to the application to amend the agreed statement. The trial court sustained the objections.

The trial court found that the funds on deposit to the credit of the clerk were public funds and that she was entitled to recover the bonds on deposit with the Trust Company, or sufficient thereof to cover the balance of the deposit in the bank.

We are of the opinion that the court did not abuse its discretion in denying the application to amend the stipulation. Furthermore, we doubt that the inclusion of the word "public" in the portion of the agreed statement of facts quoted above was of material significance. The deposit according to the stipulation was made up of "fees, funds and moneys" which the clerk was required by law to receive. We shall presently undertake to show that all of the funds received and held by the clerk in her official capacity were public funds, and embraced within the statutory provisions authorizing the giving of security to protect public deposits.

Section 7 of article 3 of the Constitution of Kansas, G.S.Kan.1935, p. LV, creates the office of clerk of the district court in each county and provides that his duties shall be prescribed by law.

Section 60-2401, G.S.Kan.1935, provides that before the clerk shall issue summons the plaintiff must give a cost bond. It further provides that a resident plaintiff may deposit with the clerk $15.00 in lieu of a cost bond and that a nonresident plaintiff may deposit in lieu of a cost bond, such sum or sums as the clerk shall deem sufficient to cover all the costs.

Section 26-101, G.S.Kan.1935, provides that the plaintiff in a condemnation action may deposit with the clerk the total amount of the appraised value of the land sought to be condemned, together with the fees of the appraisers and the court costs, and thereupon take possession of the land.

Section 60-3806, G.S.Kan.1935, provides that, when no execution is outstanding, the clerk may receive the amount of the judgment and costs and receipt therefor and that he shall pay the amount received over to the party entitled thereto on request.

Section 28-146, G.S.Kan.1935, provides that it shall be the duty of the clerk receiving any costs belonging to any other person to hold the same subject to the order of the person entitled thereto and to pay the same over on request, and if such fees are not called for within one year after having been received, to pay them over to the county treasurer and take his receipt therefor.

Section 20-904, G.S.Kan.1935, provides that in certain circumstances the clerk shall collect the reporter's fees as other costs, and that when collected he shall pay the same into the state treasury in quarterly installments.

Section 28-117, G.S.Kan.1935, prescribes the fees to be charged by the clerk for rendering the services therein specified. It further prescribes that all fees so charged and any money received by the clerk for any service required by law to be performed by him, when collected, shall be paid into the county treasury to become a portion of the general funds of the county.

Section 17-221, G.S.Kan.1935, provides that when an action is instituted in any court of the state against a foreign corporation doing business in the state the plaintiff shall deposit with the clerk a fee of $2.50, called the service of process fee, to be taxed as costs, and that the clerk shall send such fee to the Secretary of State along with the summons.

Section 28-117c, G.S.Kan.1935, provides that upon request of the Judicial Council the clerk shall prepare and furnish complete and accurate detailed information concerning cases disposed of and cases pending; that the county commissioners shall pay the clerk a sum equal to ten cents for each case so reported; that the clerk shall tax a fee of ten cents for each case filed, to be collected as other costs, and that such fee when collected shall be paid by the clerk into the county treasury.

In view of the statutory provisions above referred to, it is reasonable to assume that some part of the funds that made up the deposit was received and held by the clerk in her official capacity for the benefit of private litigants or persons entitled thereto.

Section 21-545, G.S.Kan.1935, defining embezzlement, insofar as it relates to embezzlement by public officers, reads:

"Any officer of this state or any county, township, city, board of education or school district or road district therein, * * *

who shall embezzle or convert to his own use, * * * any money, bank bills, treasury notes, goods, rights in action, or valuable security or effects whatsoever, belonging to any * * * state, county, city, board of education, township or school district, or road district, * * * which shall have come into his possession or under his care by virtue of such * * * office or trust, shall upon conviction thereof be punished," etc.

In two cases, State v. Richardson, 138 Kan. 471, 26 P.2d 251, decided November 11, 1933, and State v. Gordon, 146 Kan. 41, 68 P.2d 635, decided June 12, 1937, it was held that where moneys, the equitable title to which was in a private litigant, were deposited with the clerk of a district court, the clerk held them in trust as a public fund, and was liable for the embezzlement thereof under the above mentioned statute.

In Spratley v. Board of County Commissioners, 56 Kan. 272, 43 P. 232, it was held that moneys deposited with the county treasurer by a railroad company in proceedings for the condemnation of a right of way are public moneys, subject to the provisions of the public depository act and protected by the security given by the public depository and that interest paid thereon while in the public depository belongs to the county.

By the Act of March 11, 1933, c. 161, § 1, section 9-301, G.S.Kan.1935, public moneys are defined as follows:

"That all moneys which shall come into the hands of any officer of any county, township, school district, city or village, or any municipal or public corporation or any other political subdivision within this state, pursuant to any provision of law authorizing such officer to collect or receive the same, shall be deemed public moneys within the meaning of this act."

We are unable to find any statutory definition of public moneys prior to the act last above referred to.

It must follow from these decisions and the statutory definition which follows them that all funds which come into the hands of a public officer in Kansas by virtue of his office, whether they be held for the benefit of a private person, or belong to the state or some political subdivision thereof, are public funds.

Section 1, chapter 89, Kan.Sess.Laws of 1927, so far as pertinent here, reads:

"That section 9-142 of the Revised Statutes of Kansas, 1923, be and the same is

hereby amended to read as follows: No bank, bankers, or bank officer shall give preference to any depositor or creditor by pledging the assets of the bank as collateral security, except that bonds of the United States, of the state of Kansas, or of some county, school district, or municipality of the state of Kansas, or other securities, may be deposited with the state treasurer as security for the deposit of state money, and with the trustees of postal savings bank funds, and with any county treasurer, any city treasurer, the treasurer, or other fiscal officer responsible for public funds, of any township, board of education, school district, or other municipal body, for the security of such funds."

■ Counsel inform us that every county, city, township, board of education, school district, and other municipal body in Kansas has a treasurer. Therefore, the legislature must have intended to include other officials when in section 9-142, supra, it employed the phrase "other fiscal officer responsible for public funds" of the named political subdivisions or other municipal bodies.

■ Effect should be given to that phrase because it is a cardinal rule of construction of statutes that effect should be given if possible to every word, phrase, clause and sentence of a statute. Salt Lake County v. Utah Copper Company (C.C.A.10) 93 F.2d 127.

Section 19-1301, R.S.Kan.1923, G.S.Kan. 1935, § 19-1301, provides that in every county organized for judicial purposes there shall be elected a clerk of the district court who shall hold his office for a term of two years, and that before entering upon the duties of his office he shall give a bond to the state of Kansas with two or more sufficient sureties, conditioned that he will truly and faithfully pay over to the proper person or persons all moneys which may be by him received in his official capacity.

■ Since the clerk of the district court by virtue of his office receives and must account for fees, fines, and other moneys, including moneys paid to him for the benefit of private litigants, he is a fiscal officer of a political subdivision of the state and comes within the purview of section 9-142, supra, and is authorized to receive security from a bank for the protection of such funds deposited with the bank.

R.S. § 5153 was derived from the Act of June 3, 1864, § 45, 13 Stat. 113. It was amended by the Act of March 4, 1907, § 3, 34 Stat. 1290, 12 U.S.C.A. § 90 and note. By the Act of June 25, 1930, 46 Stat. 809, 12 U.S.C.A. § 90, it was amended by adding thereto the following:

"Any [national banking] association may, upon the deposit with it of public money of a State or any political subdivision thereof, give security for the safekeeping and prompt payment of the money so deposited, of the same kind as is authorized by the law of the State in which such association is located in the case of other banking institutions in the State."

Although funds in the hands of the clerk held in trust for the benefit of private persons are public funds under the law of Kansas, the question yet remains, are they "public money of a State or any political subdivision thereof," within the meaning of the amendment of June 25, 1930. Strictly speaking, they are not public funds of the state or any political subdivision thereof.

The term "public money" as used in the act prior to the 1930 amendment had been construed not to include funds deposited in the registry of a federal court to be held for the benefit of a private litigant or person entitled thereto.[1]

However, in Lewis v. Fidelity & Deposit Company, 292 U.S. 559, 564, 565, 54 S.Ct. 848, 850, 78 L.Ed. 1425, 92 A.L.R. 794, the Supreme Court said:

"First. The receiver contends that the act of 1930 should be construed as authorizing merely a pledge of specific assets to secure public deposits; and that the giving of a general lien upon the bank's assets is still ultra vires. The language of the act is broad enough to authorize giving a general lien on present and future assets, wherever banks organized under the laws of the state have such power; and it should be given that construction. For the main purpose of the 1930 act was to equalize the position of national and state banks; and without such power national banks would not in Georgia be upon an equality with state banks in competing for deposits. The policy of equalization was adopted in the National Bank Act of 1864, and has ever since been applied, in the provision concerning taxation. In amendments to that

---

[1] See Branch v. United States, 100 U. S. 673, 25 L.Ed. 759; Coudert v. United States, 175 U.S. 178, 20 S.Ct. 56, 44 L.Ed. 122; Chatham & Phenix National Bank v. Guaranty Trust Company (C.C.A.2) 256 F. 90.

act and in the Federal Reserve Act and amendments thereto the policy is expressed in provisions conferring power to establish branches; in those conferring power to act as fiduciary; in those concerning interest on deposits; and in those concerning capitalization. It appears also to have been of some influence in securing the grant in 1913 of the power to loan on mortgage. Compare Fidelity & Deposit Co. v. Kokrda (C.C.A.) 66 F.2d 641, 642."

And in Fidelity & Deposit Co. of Maryland v. Kokrda (C.C.A. 10) 66 F.2d 641, 642, this court said:

"The plain purpose of the statute was to remove any doubt of the power of national banks to give security for public deposits, and in that respect to enable them to invite public deposits on an equal footing with state banks."

See, also, Baltimore & O. R. Co. v. Smith (C.C.A. 3) 56 F.2d 799, 802.

If the purpose of the 1930 amendment is to be fully effectuated and national banks placed on an equal footing with state banks in Kansas in competing for the deposit of public funds, the phrase "public money of a State or any political subdivision thereof" must be liberally construed to include not only public money the beneficial right to which is in the state, but also public money the legal title of which is held by the state through its public officer acting in his official capacity for the benefit of private persons. While the question is not free from doubt we are of the opinion the liberal construction should be adopted.

It follows that the bonds secured the entire deposit. The judgment of the trial court is therefore affirmed.