COUDERT, Administrator, *v.* UNITED STATES.

ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 15. Argued October 10, 1899. — Decided November 20, 1899.

Money derived from the sale of a vessel captured in 1863 as a blockade runner, which, pending proceedings in court for condemnation and forfeiture, was deposited by the marshal to await the further order of the court in a national bank which was a special or designated depositary of public moneys, and which deposit was in part lost by reason of the failure of the bank, is not public money of the United States which may be recovered from it under the act of March 3, 1887, c. 359, 24 Stat. 505, generally known as the Tucker Act.

THE statement of the case will be found in the opinion.

*Mr. Frederic R. Coudert, Jr.,* for plaintiff in error. *Mr. Charles Frederic Adams* was on his brief.

*Mr. Assistant Attorney General Pradt* for defendant in error.

MR. JUSTICE McKENNA delivered the opinion of the court.

The plaintiff bases his right of action on the act of March 3, 1887, c. 359, known as the Tucker Act, 24 Stat. 505, and the following facts:

In November, 1863, the United States vessel Granite City seized the Spanish bark Teresita, the property of Raphael Madrazo, in the Gulf of Mexico as a blockade runner. Proceedings were instituted for her condemnation and forfeiture in the District Court for the Eastern District of Louisiana. By order of the court, dated August 23, 1864, she and her cargo were sold by the United States marshal, and the proceeds of the sale, amounting to the sum of $10,359.20, after deducting costs and other charges, were deposited by the marshal in the First National Bank of New Orleans, a special or designated depositary of public moneys of the United States,

to await the further order of the court. Judgment was subsequently rendered in favor of the claimant against the United States, from which the latter appealed to the Supreme Court, obtaining a supersedeas pending the appeal. The judgment was affirmed and restitution of the vessel and cargo directed. *The Teresita*, 5 Wall. 180.

Pending the appeal to the Supreme Court, the bank failed, and a receiver was duly appointed of its assets. In liquidating its affairs the receiver paid Madrazo during his lifetime, and to his representatives after his death, dividends amounting in all to $8183.87, the first payment May 1, 1871, the last on September 28, 1882. Madrazo died in Cuba on the 14th of April, 1877, and on the 20th of September, 1888, ancillary letters of administration were issued in the county of New York to the plaintiff in error.

After the payment of September 28, 1882, the receiver had no further funds applicable to the claim. This action was brought September 24, 1888, for the sum of $2175.43, the balance of the proceeds of the sale after deducting the payments made by the receiver.

The Circuit Court rendered judgment for the plaintiff for the amount claimed with interest from September 28, 1882. The Circuit Court of Appeals reversed the judgment, 38 U. S. App. 515, and the case was brought here.

The contention of plaintiff in error is that the deposit of the proceeds of the sale of the Teresita in the First National Bank of New Orleans, then a depositary of the public moneys of the United States, was a payment into the Treasury of the United States, and hence a receipt thereof by the United States, and, "consequently, a sum of money equal to the whole of such net proceeds must be held to have become payable to the claimant by the United States under the decree of restitution wholly irrespective of any loss of particular assets of the Treasury through the failure of the bank."

A similar contention was made upon facts very much the same in *Branch* v. *United States*, 100 U. S. 673. In that case certain cotton was seized under the Confiscation Act and sold during the progress of a suit for its condemnation by order of

the court, and the proceeds deposited by the clerk to await the further order of the court in the First National Bank of Selma, Alabama, upon a notification of the Secretary of the Interior that such bank had been designated by the Secretary of the Treasury as a depositary of public money. The suit was dismissed and judgment entered in favor of the defendants for costs. Pending the suit the bank failed, and in the proceedings for winding up its affairs a dividend upon the deposit was paid to the court, and then by order paid over to the claimants. A suit was brought against the United States for the balance of the original deposit upon the ground that the Selma bank was at the time of the deposit a designated depositary of public money and was part of the Treasury of the United States, and that consequently a deposit in it was a payment into the Treasury of the United States, binding the latter to its return if the decision of the court should be against condemnation. To the contention the court answered by Chief Justice Waite: "The position assumed by the appellants is to our minds wholly untenable. The designated depositaries are intended as places for the deposit of the public moneys of the United States; that is to say, moneys belonging to the United States. No officer of the United States can charge the Government with liability for moneys in his hands not public moneys by depositing them to his own credit in a bank designated as a depositary. In this case, the money deposited belonged for the time being to the court, and was held as a trust fund pending the litigation. The United States claimed it, but their claim was contested. So long as this contest remained undecided, the officers of the Treasury could not control the fund. Although deposited with a bank that was a designated depositary, it was not paid into the Treasury. No one could withdraw it except the court or the clerk, and it was held for the benefit of whomsoever in the end it should be found to belong."

But that case is claimed to be distinguished from the pending one because the Confiscation Act, under which the *Branch case* was decided, contained no provision for the deposit in the Treasury, *pendente lite*, of the proceeds of property seized but *not yet finally condemned.*

In other words, the argument is that there was no provision in the Confiscation Act which required. a deposit of the proceeds of the sale of property seized, and hence the deposit was the personal act of the officer, neither directed nor authorized by law, and did not charge the United States with responsibility, but that in the pending case, in pursuance of law, the deposit was virtually in the Treasury of the United States and became the property of the United States — "assets of the Treasury" — and subject, as public moneys are subject, to the use of the United States, and that the relation of debtor and creditor was created between the owner of the property sold and the United States.

The argument concedes, and necessarily, that there must have been authority or requirement of law for the deposit in this case. Was there such authority or requirement? It is claimed to have been contained in certain statutes of the United States which enabled the Secretary of the Treasury to designate national banks as public depositaries and by the acts of March 3, 1863, 12 Stat. 759, c. 86, and June 30, 1864, c. 174, 13 Stat. 308.

The latter acts respectively provided, with some difference of expression and detail, that "prize property" may be ordered sold by the court *pendente lite*, and upon any sale it shall be the duty of the marshal "forthwith to deposit the gross proceeds of the sale with the Assistant Treasurer of the United States nearest the place of sale, subject to the order of the court in the particular case." This direction of the statutes was not complied with. Its practical and legal alternative, it is contended, was complied with by a deposit of the proceeds of the sale of the Teresita in the New Orleans bank, then a public depositary, which by such designation became the Treasury of the United States.

It is impracticable to quote all the provisions of law in regard to the deposit, keeping and disbursement of the moneys of the United States. They will be found with a reference to the statutes of which they are the reproduction in the Revised Statutes of the United States, Title XL, Public Moneys. It is sufficient to say that places of deposit of the public moneys

are provided; and the duty of the officers who receive and disburse them. From these provisions it will be seen that the public moneys of the United States are the revenues of the United States from all sources, and the gross amount received must first be paid into the Treasury. (Secs. 3617 and 3618.) They are then subject to the draft of the Treasurer of the United States drawn agreeably to appropriations made by law. (Secs. 3593 and 3642. See also sec. 3210.)

From this summary we may more clearly understand the particular provisions of law which were applicable to public depositaries at the time of the deposit in this case. They were contained in the act of March 3, 1857, c. 114, 11 Stat. 249, § 3621, Rev. Stat., and in section 45 of the General Banking Act of June 3, 1864, c. 106, 13 Stat. 99, 113; § 3620, Rev. Stat.

The first act provided that "every disbursing officer or agent of the United States having any *money of the United States* intrusted to him for disbursement shall be and is hereby required to deposit the same with the Treasurer of the United States or with some one of the Assistant Treasurers or public depositaries, and draw for the same only in favor of the persons to whom payment is to be made in pursuance of law and instructions; except when payments are to be made in sums under twenty dollars, in which case such disbursing agent may check in his own name, stating that it is to pay small claims."

The second act provided that "all associations under this act, when designated for that purpose by the Secretary of the Treasury, shall be depositaries of public money, except receipts from customs, under such regulations as may be prescribed by the Secretary; they may also be employed as financial agents of the government; and they shall perform all such reasonable duties, as depositaries of public moneys and financial agents of the government, as may be required of them. And the Secretary of the Treasury shall require of the associations thus designated satisfactory security, by the deposit of United States bonds and otherwise, for the safekeeping and prompt payment of the public money deposited with them, and for the faithful performance of their

duties as financial agents of the government; Provided, that every association which shall be selected and designated as receiver or depositary of the public money shall take and receive at par all of the national currency bills, by whatever association issued, which have been paid into the government for internal revenue or for loans or stocks."

It was also provided by the act of August 6, 1846, sec. 3616, Rev. Stat., " All marshals, district attorneys and other persons than those mentioned in the preceding section, having public money to pay to the United States, may pay the same to any depositary constituted by or in pursuance of law which may be designated by the Secretary of the Treasury."

It is obvious from these provisions that it was only *public money* of the United States of which national banks could be made depositaries, and it was therefore only *public money* which an officer could deposit in them, whether he received it originally or received it to disburse.   This is the ruling in the *Branch case,* and it is clearly applicable to the case at bar. By the seizure of the Teresita the title to her did not change nor the title to the proceeds of her sale, *pendente lite.*   That awaited adjudication, and whatever relations to such proceeds or responsibility for them the United States might have assumed if they had been deposited with an Assistant Treasurer, they did not become public money and subject to the statutes applicable to public money, and authorized to be deposited in a public depositary.

It is not without significance that when Congress authorized " moneys paid into any court of the United States, or received by the officers thereof, in any cause pending or adjudicated in such court," to be deposited with a designated depositary, it required it to be done " in the name and to the credit of such court," and not to the credit of the United States.   Act of March 24, 1871, c. 2, 17 Stat. 1.

*Judgment affirmed.*

NOTE. — This case stood on the docket in the name of Charles Coudert as ancillary executor.   Just before it was reached for argument, his death was suggested, and the appearance of Paul Fuller as administrator was entered.