### In re TWO RIVERS WOODENWARE CO.

### FIRST SAVINGS & TRUST CO. v. MANN.

(Circuit Court of Appeals, Seventh Circuit. April 23, 1912.)

No. 1,829.

1. BANKRUPTCY (§ 343*)—CLAIMS—FILING—ALLOWANCE.

Under Bankr. Act July 1, 1898, c. 541, § 57, 30 Stat. 560 (U. S. Comp. St. 1901, p. 3443), providing for proof and allowance of claims, the filing of a proved claim does not necessarily constitute an allowance thereof, since, until a direct or indirect order of allowance is made, objections may be properly filed thereto.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 522; Dec. Dig. § 343.*]

2. BANKRUPTCY (§ 360*)—CLAIMS—RECONSIDERATION—RECOVERY OF DIVIDENDS.

Until a direct or indirect order of allowance of claims filed against a bankrupt's estate is made, it is not necessary for the bankrupt's trustee

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

to proceed for a reconsideration of the claim to which he desires to object, as authorized by Bankr. Act July 1, 1898, c. 541, § 57k, l, 30 Stat. 561 (U. S. Comp. St. 1901, p. 3444), in order to recover dividends paid.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 547; Dec. Dig. § 360.*]

3. BANKRUPTCY (§ 339*)—CLAIMS—CONTEST—RIGHT OF BANKRUPT'S TRUSTEE.

While a bankrupt's trustee was operating the property at a loss, C. made a written offer to take the property and business, to pay in full all claims allowed as entitled to priority except as to the claim of M., with reference to which proceedings were then pending. In a separate paragraph of the offer, it was provided that the property claimed by M. as security for his claim should be held by the trustee pending administration of the proceedings, and, in the event the transfer to M. should be held invalid, the whole of the property or proceeds to be turned over to C., less an amount sufficient to pay M. 20 per cent. of his claim as C. had agreed to pay general creditors of the estate, including the trustees' fees and the fees and expenses as adjusted and agreed on up to the date of the offer, and to pay such additional expenses as might be necessary and properly incurred between the date of the offer and the final acceptance of the proposition and that, as soon as practicable after one year from the date of the adjudication, provided all claims previously filed had been adjusted and disposed of, an account should be had between C. and the trustee on the basis provided for. *Held*, that it was contemplated that the trustee should proceed with the determination of the estate, and, the offer having been accepted, the trustee had capacity to resist claims filed against the estate.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 525, 526; Dec. Dig. § 339.*]

4. JUDICIAL SALES (§ 50*)—PARTIES—PURCHASER.

A purchaser at a judicial sale becomes a party to the proceedings, and brings himself within the court's jurisdiction in the cause, for the enforcement, not only of the terms of sale against him, but also of terms in his favor against the selling officer.

[Ed. Note.—For other cases, see Judicial Sales, Cent. Dig. §§ 90–94, 96; Dec. Dig. § 50.*]

Appeal from the District Court of the United States for the Eastern District of Wisconsin.

In the matter of bankruptcy proceedings of the Two Rivers Woodenware Company. From an order allowing the claim of Fred M. Mann as entitled to share in the disposition of money obtained as the result of a sale agreement, the First Savings & Trust Company, successor to the Milwaukee Trust Company, as trustee of the bankrupt, appeals. Reversed, with directions.

Francis Bloodgood, Jackson B. Kemper, Wheeler P. Bloodgood, George P. Miller, Edwin S. Mack, and Arthur W. Fairchild, for appellant.

Elias H. Bottum and Louis A. Lecher, for appellee.

Before BAKER and SEAMAN, Circuit Judges, and CARPENTER, District Judge.

BAKER, Circuit Judge. On April 8, 1910, Two Rivers Woodenware Company was adjudged a bankrupt. Its operations as a going manufacturing concern were continued by the trustee. Its affairs were very badly involved; its plant was mortgaged for about twice what

it would probably sell for; its other assets were largely pledged or claimed by preferential creditors; and by September 1, 1910, the trustee was indebted more than $35,000 in keeping the business going. In a statement to unsecured creditors the trustee explained that their chance of realizing anything would depend materially on the result of his efforts to recover property and set aside alleged preferences. On the other hand, the mortgagees and others who asserted priority might not realize the face of their claims if the business should be disrupted and the dead property burdened with large costs and expenses.

On October 14, 1910, John F. Conant made an offer (shown by the trustee's statement to general creditors to have been on behalf of the bondholders and other claimants of preferences) to take over the property and business on certain terms, among which only the following are material to the present controversy:

"(3) To pay and discharge in full any claims filed against the estate and which have been heretofore, or may hereafter be allowed as entitled to priority, and to payment in full, except as to the claim of Fred M. Mann in reference to which proceedings are pending in the bankruptcy court, and which claim shall be dealt with as provided for in paragraph 5 hereof.

"(4) To pay all other creditors of the Two Rivers Woodenware Company whose claims are by order of court allowed as such in the bankruptcy proceedings at the rate and percentage of twenty (20) per cent. of the amount of the respective claims so allowed, and for that purpose to pay you the sum of eleven thousand dollars ($11,000.00) in cash, which, it is estimated, is sufficient to pay the claims now filed or likely hereafter to be filed and allowed at the rate of percentage aforesaid, upon the understanding and condition that, in the event there is any surplus after making such payments, such surplus shall be returned to me, and, in the event there is any deficiency, such deficiency to be paid by me. For the payment of any such deficiency I am to furnish bond in the sum of ten thousand dollars ($10,000.00), with surety satisfactory to you, and to be approved by the court. As soon as practicable after one year from the date of the adjudication, providing all claims theretofore filed have been adjusted and disposed of, an accounting is to be had between us on the basis herein provided for.

"(5) The property claimed by Fred M. Mann as security for the indebtedness alleged to have been due him, as specified in the petition filed by you as trustee in the matter of the Two Rivers Woodenware Company, bankrupt, and the answer of Fred M. Mann thereto, is to be held by you pending the hearing and final determination in said proceedings. (It being understood that the matter shall not be considered as finally determined until the time for taking an appeal to a court of last resort shall have expired.) In the event it is determined that the transfer to said Mann is invalid, the whole of said property, or the proceeds thereof, shall be turned over to me by you less such amount as may be sufficient to pay the said Fred M. Mann at the rate of twenty (20) per cent. on any claim that may be allowed in his favor by the bankruptcy court. The costs and expenses of every nature in connection with further contest or litigation arising or growing out of proceed-ings in connection with the claim of the said Fred M. Mann to be paid by me.

"(6) To pay all costs and expenses, of every name, nature and description, in the matter of the administration of the estate, including your fees and expenses, the fees and expenses of your counsel and attorneys, the fees and expenses of the referee, as this day adjusted and agreed between us, and to pay such additional expenses as may be necessarily and properly incurred between this date and the final acceptance of this proposition and conveyance of the property thereunder to me."

This offer was accepted by the creditors and by the court; and on November 7, 1910, the assets of the bankrupt were conveyed to Conant.

On November 28, 1910, the referee formally allowed certain claims, not including appellee's, and the trustee filed objections to appellee's claim, which had been filed on July 12, 1910. Appellee moved the referee to strike out the objections. The motion was overruled. On May 16, 1911, the District Court reversed the ruling of the referee, and ordered the payment of appellee's claim as filed. The trustee appeals from that order.

Sections of the Bankruptcy Act to be considered in connection with the foregoing facts are these:

Section 2: Courts of bankruptcy are invested with jurisdiction to "(2) allow claims, disallow claims, reconsider allowed or disallowed claims and allow or disallow them against bankrupt estates."

Section 57a:

"Proof of claims shall consist of a statement under oath, in writing, signed by a creditor setting forth the claim, the consideration therefor, and whether any, and, if so what, securities are held therefor, and whether any, and, if so what, payments have been made thereon, and that the sum claimed is justly owing from the bankrupt to the creditor."

Section 57c:

"Claims after being proved may, for the purpose of allowance, be filed by the claimants in the court where the proceedings are pending or before the referee if the case has been referred."

Section 57d:

"Claims which have been duly proved shall be allowed, upon receipt by or upon presentation to the court, unless objection to their allowance shall be made by parties in interest, or their consideration be continued for cause by the court upon its own motion."

Section 57k:

"Claims which have been allowed may be reconsidered for cause and reallowed or rejected in whole or in part, according to the equities of the case, before but not after the estate has been closed."

Section 57l:

"Whenever a claim shall have been reconsidered and rejected, in whole or in part, upon which a dividend has been paid, the trustee may recover from the creditor the amount of the dividend received upon the claim if rejected in whole, or the proportional part thereof if rejected only in part."

[1] Appellee insists that a "proved" claim on being "filed" is ipso facto "allowed," and that, since his claim was therefore "allowed" on July 12th, its status was definitely fixed within the meaning of Conant's subsequent offer and the creditors' acceptance thereof.

[2] Three steps are necessary to complete the allowance of a claim. Section 57a shows how a claim shall be "proved." This is the claimant's act. Section 57c provides that proved claims "may, for the purpose of allowance, be filed." Filing is the ministerial act of the clerk or referee. That filing is not allowance is established by the language

that the claim is filed "for the purpose of allowance." It may be that the command of section 57d, "shall be allowed upon receipt by or upon presentation to the court," would entitle a claimant to an order of allowance instanter unless objections were at once interposed, or unless the court upon its own motion should postpone consideration. But "allowance," different from the party's act of "proving" and the ministerial act of "filing," is a judicial act. This is found, not only by comparing with each other the several provisions of section 57, but also by recurring to section 2 (2), relating to the powers and duties of bankruptcy courts, wherein the acts of allowing, disallowing, and reconsidering claims are all given the same quality. In practice it may be common to forego formal orders of allowance, and to treat as allowed, for purposes of distributing dividends, all claims to which objections have not been filed. But the inclusion of proved and filed claims in an order of distribution may be considered as an indirect order of allowance. Until a direct or indirect order of allowance is made, objections may properly be filed. And, until a direct or indirect order of allowance is made, it is not necessary to proceed under section 57k and *l*, for a reconsideration of a claim and a recovery of dividends already paid. It was, therefore, error to strike out the trustee's objections to appellee's claim unless Conant's offer was to treat as "allowed" all claims "proved" and "filed," or unless the trustee had no standing to object.

[3] Part of appellee's claim was alleged to be entitled to priority. This is governed by paragraph 3 of Conant's offer. Appellee's contention is that the exclusion of Fred M. Mann's claim meant that all other priority claims then on file should be paid. From paragraph 5 it will be learned that Fred M. Mann was asserting the right of possession of specific property in the trustee's hands, and that the matter was already in litigation. No other priority claim appears to have been in that status. Therefore Fred M. Mann's claim was excepted from the general provision of paragraph 3 for specific treatment in paragraph 5. The general provision of paragraph 3 is for the payment of priority claims "which have been heretofore or may hereafter be allowed as entitled to priority." Claims already filed were given no advantage over claims that might subsequently be filed. If appellee's position is right, Conant intended to bind himself to pay all priority claims that might be presented during the remaining five months of the year for making claims, without any liberty to resist illegal or padded claims. That Conant intended to pay creditors more than was actually due them seems hardly credible, and certainly is not inescapably established by the wording of the offer. Respecting the unsecured part of appellee's claim, the matter is even clearer, for the offer was to pay only those creditors "whose claims are by order of court allowed as such in the bankruptcy proceedings."

[4] Because a payment to appellee beyond what may be justly due would not concern the bankrupt or the other creditors, it is argued that the trustee had no lawful standing to object. But a purchaser at a judicial sale becomes a party to the proceedings, and brings himself

within the court's jurisdiction in the cause for the enforcement, not only of the terms of sale against him, but also of terms in his favor against the officer who has made the sale. Inasmuch as the allowance of claims then or thereafter filed was a judicial act to be had in the bankruptcy proceedings, the bargain necessarily included the keeping open of the estate during the year and the proper action of the trustee on Conant's behalf respecting the judicial allowance of claims. This is explicitly shown by the last sentence in paragraph 4, which provides for an accounting at the end of the year when all claims shall have been adjusted. In paragraph 6 Conant's general undertaking to pay all costs and expenses is not destroyed, in our opinion, by the specific inclusion of the trustee's fees and expenses "as this day adjusted and agreed upon between us" and of additional expenses incurred (as, for example, in keeping the plant running) down to the conveyance of the property to Conant. Nothing in the contract therefore ended the administration of the estate at the time of the sale; but, on the contrary, a due execution thereof required that the administration be continued throughout the year.

As appellee's demand for payment without judicial investigation of his claim is based on the assumed validity of Conant's offer and the creditors' and the court's acceptance, by the present decision neither an approval nor a disapproval of this method of disposing of a bankrupt's assets is intended.

The order of the District Court is reversed, with the direction to restore the trustee's objections, and to proceed further not inconsistently with this opinion.