Sidney **LEVY**, et ux., **Plaintiffs,**

v.

The **UNITED STATES, Defendant.**

No. 736–85L.

United States Claims Court.

Aug. 14, 1986.

apore, and articles VII and XIV of that with Integral Engineering.

Robert P. Frankel, Miami, Fla., for plaintiffs.

Glen R. Goodsell, Washington, D.C., for defendant.

## OPINION

BRUGGINK, Judge.

This case comes before the court on defendant's Motion To Dismiss Plaintiffs' Complaint for lack of jurisdiction and failure to state a claim upon which relief can be granted. For the reasons set forth below, the court finds that it has jurisdiction over the action, but that partial summary judgment must be granted against plaintiffs because, with respect to their first claim, no material facts are in dispute and they have failed to set forth a claim entitling them to relief.

## FACTS

Pursuant to a March 22, 1985 Order for Interlocutory Sale entered by the United States District Court for the Southern District of Florida, certain property in Golden Beach, Florida, was ordered sold. Plaintiffs in that case had filed a Complaint To Quiet Title after the property was forfeited to the United States under 21 U.S.C. § 848(a)(2)(A) (1982), as the profits of a continuing criminal enterprise which "afforded a source of influence over" the owner's drug enterprise. *See* Memorandum Opinion Containing Findings of Fact and Conclusions of Law in *Ramaria Familienstiftung v. United States,* 643 F.Supp. 139, 144 (S.D. Fla.1986). The property consisted of two parcels of land. Parcel A is Lots 23, 24, and 25, Block D, Section A, known as 577 Ocean Boulevard, Golden Beach, Florida. Parcel B, located directly across the street from Parcel A, is Lot 3, Block 2. The district court ordered the sale "on behalf of this Court and subject to its continuing supervision by the U.S. General Services Administration." *Id.* at 2.

The General Services Administration (GSA) advertised the property as, inter alia, "an oceanfront villa, nine bedrooms, seven baths, pool, and tennis court," and publicly auctioned it, on-site, at 4:00 p.m. on April 25, 1985. Paragraph 3 of the General Terms of Sale, "Condition of Property," stated:

The property is offered for sale and will be sold "As Is" and "Where Is" without representation, warranty or guaranty as to quantity, quality, character, condition, size, or kind, or that the same is in condition or fit to be used for the purpose for which intended, and no claim for any allowance or deduction upon such grounds will be considered after the auction.

Exhibit C, Defendant's Motion To Dismiss, filed March 25, 1986. Plaintiffs, who are husband and wife, submitted the highest qualified bid, $919,000.00, and were awarded the property.

On the day before the sale, a notice of encroachment filed by I.J. Archer was recorded in the Dade County, Florida land records, asserting that the improvements on Parcel B encroached by approximately five feet onto her property. That parcel contains the tennis court, while all of the remaining improvements stand on Parcel A.

By order dated May 16, 1985, the district court confirmed the interlocutory sale to plaintiffs in this action. On August 12, 1985, after correspondence between plaintiffs' attorney and GSA concerning the encroachment and damages to Parcel A alleged to have occurred after the auction, the sale was finalized at the bid price by issuance of both a quit-claim deed and a bill of sale by the United States to plaintiffs.

Plaintiffs filed their complaint in this court on December 16, 1985. On May 16, 1986, they filed a Petition To Intervene in the quiet title action then still pending in the district court, seeking permission to file a Petition for Declaratory Decree or, in the Alternative, Petition for Relief from Order. On May 30, 1986, the district court entered a final judgment in that action, awarding all of the proceeds of the sale of both parcels of land to the United States. Neither the final judgment nor the memorandum opinion also filed by the district court on May 30, 1986, referred to plaintiffs or their May 16, 1986 petitions. However, on June 24, 1986, the district court issued an order stating that "Petitioners' Petition for Declaratory Decree or, in the Alternative, Petition for Relief from Order ... is hereby denied."

Oral argument on defendant's motion was held on July 31, 1986.

## PLEADINGS

The essence of plaintiffs' complaint is that the United States advertised for sale a luxury residence with a tennis court; that because of the encroachment the tennis court has been rendered unusable; and that GSA knew of the encroachment but failed to so inform bidders at the auction. In addition, they assert that damage was done to the house, its furnishings and fixtures, and to its appurtenant structures while it was still under the control of a GSA-appointed custodian, Tom Ward. Plaintiffs seek damages for the diminution in value resulting from both the encroachment and the missing and damaged items.

In its answer and subsequent pleadings, defendant denies knowledge by GSA of the encroachment prior to the recordation of the notice of encroachment in the county land records and denies that Mr. Ward was hired by GSA to maintain the property. On March 26, 1986, it moved for dismissal of the claims for lack of jurisdiction and failure to state a claim upon which relief can be granted. Specifically, defendant asserts that this court lacks jurisdiction for two reasons. First, it contends that a claim arising out of a judicial sale in a federal district court must be prosecuted before that court and not before this court. Second, it contends that the complaint charges GSA with negligence, which sounds in tort, and that tort claims are specifically excepted from this court's jurisdiction.

As to its assertion that plaintiffs have failed to state a claim on which relief can be granted, defendant contends that plaintiffs' claim can rise no higher than their contract, and that because they bought the property with constructive knowledge of the encroachment, i.e., after recordation of the notice, and on an "as is" basis, they are entitled to no relief. Defendant also asserts, in this regard, that plaintiffs waived any claim they may have by accepting the bid package of GSA.

By order dated June 10, 1986, this court informed the parties that it would be appropriate to treat defendant's motion to dismiss, insofar as it asserted under RUSCC 12(b)(4) that the complaint fails to state a claim upon which relief can be granted, as a motion for summary judgment under Rule 56. The court provided the parties with an opportunity to file additional legal argument and materials in support of, or opposition to, summary judgment and with respect to the jurisdictional aspects of defendant's motion.

In response, defendant reasserts its first claim, that plaintiffs' remedy, if any, must be in a proceeding before the district court. With respect to its argument that this court cannot take jurisdiction over the case because it sounds in tort, defendant asserts that insofar as plaintiffs base their claims on fraud and misrepresentation by GSA, they are outside the scope of the court's authority. Finally, defendant argues that there was no contractual obligation on the part of the government with regard to the maintenance of property after the bid, and that plaintiffs' claim for damages sustained while Mr. Ward maintained the property is a claim for consequential damages, which are not recoverable against the United States in a breach of contract action.

Briefly stated, plaintiffs respond by asserting that jurisdiction rests exclusively in the United States Claims Court because they had a contractual relationship with GSA and are seeking damages in excess of $10,000.00. Moreover, they contend that even if the district court has concurrent jurisdiction, their claim may still be raised in this forum because they are not technically parties to a proceeding before that court. They also contend that their claim that GSA's actions were tortious does not take the action out of the jurisdiction of this court because the underlying claim is for breach of contract. With respect to the issues now before the court on motion for summary judgment, plaintiffs claim that the notice of encroachment was known to GSA, that GSA's failure to inform bidders of its existence constituted a material nondisclosure, and that the government is liable for breach of contract when it fails to disclose information in its possession and not available elsewhere. Finally, plaintiffs contend that they could not waive their claim because waiver requires an intentional relinquishment of a known right and they were unaware of both the encroachment and the fact that items on the property would be removed or damaged.

## ISSUES

The questions before the court are the following:

A. RUSCC 12(b)(1)—lack of jurisdiction.

1. Does this court have jurisdiction over a suit brought by the purchasers of property at a judicial sale, ordered by a district court and conducted by GSA where they seek damages in excess of $10,000.00 for an alleged breach of the sales contract?

2. Does this court have jurisdiction over a claim that defendant acted tortiously, either by negligence or through fraud and misrepresentation?

B. RUSCC 12(b)(4)—failure to state a claim upon which relief can be granted.

1. Have plaintiffs stated a claim upon which relief can be granted where their claim for damages arises from an "as is" sale of property which took place after the recordation of a notice of encroachment on the property at issue?

2. Have plaintiffs stated a claim upon which relief can be granted because of removed or damaged items on the property

or is such a claim one for consequential damages?

## ANALYSIS

*Issue A.1.   Judicial Sale*

Defendant asserts that if plaintiffs have a right to recover damages for any diminution in value of the property they purchased at the judicial sale ordered by the district court, it is only before that court that they may bring their claim. In support of their assertion, defendant relies on *United States v. Branch Coal Corp.*, 390 F.2d 7 (3d Cir.), *cert. denied*, 391 U.S. 966, 88 S.Ct. 2034, 20 L.Ed.2d 878 (1968); *In re Two Rivers Woodenware Co.*, 199 Fed. 877 (7th Cir.1912); and *Central Trust Co. v. Wabash, St. Louis & Pacific Railway*, 30 F. 332 (E.D.Mo.1887). Under the peculiar circumstances of this case, the court disagrees.

The cited cases clearly indicate that a court which has ordered a sale has discretion to set the terms of the sale and that when the court enters its decree that document sets forth the scope of the parties' rights and duties. *See Branch Coal*, 390 F.2d at 10 (court's decree controlling upon parties and fixes their rights and obligations); *Central Trust*, 30 Fed. at 336 (purchaser at judicial sale looks to judgment or decree for measure of his rights). Further, *Two Rivers*, 199 Fed. at 881–82, holds that "a purchaser at a judicial sale becomes a party to the proceedings, and brings himself within the court's jurisdiction in the cause for the enforcement ... of the terms of the sale."

Each of these cases, however, involved parties to a judicial sale who pursued their later claims before the court which ordered the sale. Thus, the courts had no occasion to decide whether the forum each provided was the only one to which a party could look for redress in connection with the sale. The cases do not hold that the court which orders a sale is the parties' exclusive avenue of recourse, but only that such an avenue exists, to which they may turn to enforce the terms of the sale. Because that is not the issue in this case,[1] the court concludes that these cases are not dispositive of the matter before it.

Pursuant to 28 U.S.C. § 1491(a)(1),

The United States Claims Court shall have jurisdiction to render judgment upon any claim against the United States founded ... upon any express or implied contract with the United States.

Thus, this court has jurisdiction under this section over claims founded upon contract with the United States. There is no question that such a contract exists. During oral argument, counsel for defendant conceded that there does exist a contract between plaintiffs and the United States, but argued that it was with the district court, and may only be enforced there. It argues that GSA was only acting as an agent in carrying out the sale, which was ordered and supervised by the district court. While it may be true that a district court's decree is generally the buyer's "contract with the court,"[2] *Central Trust*, 30 F. at 336, the

---

**1.** Although plaintiffs assert at one point in their Memorandum of Law in Opposition to Motion To Dismiss, filed May 22, 1986, that jurisdiction vests exclusively in the United States Claims Court because they are seeking damages in excess of $10,000.00, *see* 28 U.S.C. § 1346(a)(2) (1982), they later argue in the same memorandum that there may be concurrent jurisdiction in this court and the district court. In their June 30, 1986 Supplemental Memorandum of Law, plaintiffs also seem to concede the existence of concurrent jurisdiction. Inasmuch as the district court had jurisdiction to order the sale, its jurisdiction would continue over ancillary matters such as this, irrespective of an otherwise applicable jurisdictional amount limitation. *See, e.g., Local Loan Co. v. Hunt*, 292

U.S. 234, 695, 54 S.Ct. 695, 78 L.Ed. 1230 (1934); *Ballard v. Mutual Life Ins. Co.*, 109 F.2d 388 (5th Cir.1940); *Nunokawa v. Fairway Investments*, 359 F.Supp. 342 (S.D.Tex.1973).

**2.** The court notes that 28 U.S.C. § 2041 (1982) provides that any money paid to a court in any case adjudicated there is to be credited to the court. While this means to the credit of the court and not of the United States, *Coudert v. United States*, 175 U.S. 178, 20 S.Ct. 56, 44 L.Ed. 122 (1899), the distinction is for the protection of the private litigants who may claim a right to such proceeds. *See Mermis v. Jackson*, 93 F.2d 579, 583 (10th Cir.1937). In this case, the litigants for whose protection the proceeds were segregated included the United States, which

record in the instant case shows that plaintiffs' contract was "with the United States," within the meaning of section 1491.

The court notes, as did the district court, that the United States was not merely a disinterested newcomer with respect to the property. Rather, the government's interest in it attached at the time of the criminal conviction of the former owner on October 18, 1982, but it had vested even before that time, when the unlawful acts on which the conviction was based occurred. *United States v. Ginsburg*, 773 F.2d 798 (7th Cir. 1985), *cert. denied,* — U.S. —, 106 S.Ct. 1186, 89 L.Ed.2d 302 (1986); *see Ramaria Familienstiftung*, 643 F.Supp. at 145.

Relevant documents both preceding and postdating the auction sale confirm the existence of a contract with the United States. The form on which plaintiffs submitted the bid is entitled "Public Auction—Bid To Purchase Government Real Property." The General Terms of Sale, under which the purchase took place, is replete with references to the government's role and authority with respect to the sale. *See, e.g.,* paragraph 4 ("the bid is accepted or rejected by the Government"), paragraph 9 ("[t]he contract made by acceptance of a bid by the Government.... The acceptance of any bid by the Government may be rescinded by the Government"), paragraph 10 ("the deposit ... may be forfeited at the option of the Government"), and paragraph 13 ("the Government shall deliver to the successful bidder the instrument, or instruments, of conveyance").[3] Further, paragraph 15 provides:

15. CONTRACT

The Invitation for Bids, and the bid when accepted by the Government, shall constitute an agreement for sale between the successful bidder and the Government. Such agreement shall constitute the whole contract to be succeeded only by the formal instruments of transfer unless modified in writing and signed by both parties. No oral statements or representations made by, or for, or on behalf of either party shall be a part of such contract, or any interest therein, be transferred or assigned by the successful bidder, without consent of the Government, and any assignment transaction without such consent shall be void.

Moreover, the two documents effecting the sale directly evidence a contract with the United States. The Quitclaim Deed, Exhibit G to the complaint, specifies that it is an

INDENTURE, made this 12th day of August, 1985, between the UNITED STATES OF AMERICA, acting by and through the Administrator of General Services, under and pursuant to the powers and authority contained in the provisions of the Federal Property and Administrative Services Act of 1949, approved June 30, 1949 (P.L. 81–152), as amended (40 U.S.C. 484), and regulations and orders promulgated thereunder, Grantor, and SIDNEY LEVY AND SANDRA LEVY, his wife, or assigns ... Grantees.[4]

Finally, the Bill of Sale, Exhibit I to defendant's motion to dismiss, states

That the UNITED STATES OF AMERICA, acting by and through the Administrator of General Services ... Seller ... does, subject to the terms and conditions of that certain Contract for Sale of Real Property made and entered into by and between the United States of

---

became the successful contender for all of the funds. In any event, in light of the court's conclusion that plaintiffs have a contract with the United States that provides a basis of liability apart from any claim to the sales proceeds, this statutory provision is insufficient basis for a finding that plaintiffs' sole recourse is before the district court.

**3.** *See also* paragraphs 8a, b, c, concerning insurance coverages required to protect the government's interests. In addition, paragraph 7 of the Instructions To Bidders states that "[t]he Government may, at its election waive any minor informality or irregularity in bids received."

**4.** 40 U.S.C. § 484 (1982), entitled "Disposal of Surplus Property," discusses the authorities of the Administrator of GSA to supervise and direct disposition of surplus property.

America, Seller, and Sidney and Sandra Levy, Purchasers, and without warranty either express or implied, hereby quitclaims and transfers to the said Purchasers, all rights, title, and interests which the Seller may have in permanent fixtures located on that certain property known as 577 Ocean Boulevard, Golden Beach, Florida.

■ The hallmark of a judicial sale is that it is ordered by a court and carried out by someone appointed by the court, generally a United States Marshal. *See United States v. Peters*, 777 F.2d 1294, 1297 (7th Cir.1985); *Quinn v. S.S. Jian*, 235 F.Supp. 975, 977 (D.Md.1964). The Marshal is "the marshal of the district court and of the court of appeals when sitting in his district," 28 U.S.C. § 569(a) (1982), and Deputy Marshals are recognized as officers of the court. *Bollin v. Blythe*, 46 Fed. 181 (C.C.S.C.1891). Under those circumstances, only the court itself is involved in the sale. By contrast, in the case at bar, GSA was directly and deeply involved in the transaction. By virtue of the earlier forfeiture, it had control over the property both before and after the court ordered the sale. It planned the sale, required that the bid deposit of the prospective purchaser be a "certified or cashier's check endorsable to the General Services Administration" (Instructions To Bidders, paragraph 4), conducted the auction, prepared at least some of the documents effectuating the sale and transfer of the property, accepted the bid on behalf of the United States, subject to court confirmation, and continued to be the point of contact for plaintiffs in their discussions concerning the encroachment and the property damage claims.

In the court's view, these factors set the instant case apart from the usual judicial sale. Irrespective of what may be the rule in the case of the usual judicial sale conducted by a Marshal, the court finds that on the basis of the evidence in this case, plaintiffs have a contract with the United States, within the meaning of 28 U.S.C. § 1491(a)(1) and that this court therefore has jurisdiction over the claim for breach of contract.[5]

■ One point of inquiry remains in connection with this issue, however, and that is whether, because of the proceedings in the district court with respect to the property, this court loses jurisdiction as a result of 28 U.S.C. § 1500 (1982). The court holds that it does not.

In accordance with 28 U.S.C. § 1500,

The United States Claims Court shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

Section 1500 was enacted largely to eliminate duplicative litigation between claimants and the government. *Tecon Engineers, Inc. v. United States*, 170 Ct.Cl. 389, 343 F.2d 943 (1965), *cert. denied*, 382 U.S. 976, 86 S.Ct. 545, 15 L.Ed.2d 468 (1966). *See generally* Schwartz, *Section 1500 of the Judicial Code and Duplicate Suits Against the Government and Its Agents*, 55 Geo.L.J. 573 (1967). In *Tecon*, the Court of Claims held:

[W]e conclude that the only reasonable interpretation of the statute is that it serves to deprive this court of jurisdiction of any claim for or in respect to

---

5. Pursuant to 28 U.S.C. § 2409 (1982), an action may be brought against the United States "to adjudicate a disputed title to real property in which the United States claims an interest," and under 28 U.S.C. § 1346(f) (1982), the district courts have exclusive original jurisdiction of such actions, without regard to the amount in controversy. *Fulcher v. United States*, 632 F.2d 278, 285 (4th Cir.1980) (per curiam), *rev'd on* *other grounds*, 696 F.2d 1073 (4th Cir.1982). The instant case, which in its current posture does not involve a dispute as to title, now clearly held by plaintiffs, is therefore not barred in this court by § 1346(f). *See Ginsberg v. United States*, 707 F.2d 91 (4th Cir.1983); *see also Cummings v. United States*, 648 F.2d 289 (5th Cir. Unit A June 1981).

which plaintiff has pending in any other court any suit against the United States, *only* when the suit shall have been commenced in the other court *before* the claim was filed in this court.

170 Ct.Cl. at 399, 343 F.2d at 949 (emphasis in original).

Defendant asserts, on the authority of *Two Rivers*, 199 Fed. 877, that by virtue of having purchased at the judicial sale, plaintiffs essentially became parties to that action. According to defendant, plaintiffs thus were parties to an action preexisting the complaint filed in this court. It is undisputed, however, that plaintiffs did not file an independent suit in the district court, nor did they seek to intervene in the action pending there until the government filed its motion to dismiss filed in this court. Thus, on the authority of *Tecon*,[6] absent a finding that the purchase at the judicial sale sufficed to make plaintiffs parties to the action pending in the district court prior to the initiation of the instant action, the Claims Court would not lose jurisdiction over the case.[7]

Plaintiffs never participated in any of the proceedings before the district court leading to its May 30, 1986 determination. To hold that plaintiffs were bound by the district court's decisions solely by virtue of the authority of *Two Rivers* would leave them without a forum in which to present their case.

■ *Tecon* "teaches that Section 1500 should be given a reasonable and just construction, not a doctrinaire or purely technical one." *Hill v. United States*, 8 Cl.Ct. 382 (1985). Because the purpose behind Section 1500 is to prevent the government from having to defend itself in duplicative litigation, a situation which is no longer possible in this case, and since the plaintiffs evidenced a continuing intent to have their claim heard in this court and not by the district court, the court finds that the authority of *Two Rivers* provides an insufficient basis for holding[8] that the mere existence of the judicial sale is sufficient to oust this court of jurisdiction.[9]

6. In *Corona Coal Co. v. United States*, 263 U.S. 537, 44 S.Ct. 156, 68 L.Ed. 431, the Supreme Court held that § 1500 sufficed to bar Court of Claims jurisdiction where the district court suit was filed after the suit in the Court of Claims. However, the *Tecon* case, which is binding on this court, more recently expressed a view to the contrary. In *Tecon*, the Court of Claims addressed the issue at length and reached its conclusion after a thorough consideration of the legislative history of § 1500 and in comparison to its predecessor provision. The Court of Claims decisions in *Corona Coal Co. v. United States*, 56 Ct.Cl. 390 (1921), and 57 Ct.Cl. 607 (1922) did not undertake such an analysis, and the Supreme Court's decision, which contained a one paragraph discussion of the issue, also does not evidence the depth of inquiry apparent in *Tecon*.

7. As noted earlier, the district court concluded its consideration of the question of who is entitled to the proceeds of the sale to plaintiffs, and denied their petition for relief. While the rule is that a "dismiss[al] by final adjudication upon the merits" will not operate to return jurisdiction to this court where it was once lost under § 1500, *British American Tobacco Co. v. United States*, 89 Ct.Cl. 438, 441 (per curiam), *cert. denied*, 310 U.S. 627, 60 S.Ct. 974, 84 L.Ed. 1398 (1940), the district court's ultimate determination is of no relevance to the § 1500 inquiry unless plaintiffs are held to be parties to the

proceeding from a date prior to the filing of the complaint in this court. *See Tecon*, 170 Ct.Cl. at 399, 343 F.2d at 949. And, if they are held to be parties at that time, then the mere existence of the other pending action would be sufficient to oust this court of jurisdiction under § 1500. *Cf. Brown v. United States*, 175 Ct.Cl. 343, 358 F.2d 1002 (1966) (per curiam) (Court of Claims had jurisdiction over claim filed first in district court if that action dismissed for lack of jurisdiction).

8. Nonetheless, in so holding, the court rejects plaintiffs' reliance on *Burgos v. Milton*, 709 F.2d 1 (1st Cir.1983), as dispositive of the matter. *Burgos* concerned a tax sale conducted by the Internal Revenue Service, not a judicial sale ordered by the district court. Since an agency of the United States not only conducted, but ordered the sale, the suit alleging defective title was found to be properly brought under 28 U.S.C. § 1491.

9. As discussed earlier, the district court denied plaintiffs' petitions for declaratory decree or relief from the court's earlier order which sought, inter alia, the modification of the price paid for the property. Although asserted for the first time at oral argument, that denial raises a potential issue of whether recovery in the instant action is barred by res judicata. While the defendant took the position at oral argument

By this holding the court does not suggest that the district court would not have been a proper or perhaps a preferred forum for hearing plaintiffs' claim. The court holds merely that under the peculiar facts of this case, that forum is not exclusive.[10]

*Issue A.2. Tort Cause of Action*

■ The gravamen of the plaintiffs' claim is that GSA breached an agreement to sell them certain real property by failing to deliver a tennis court and the fixtures on the property which were present at the time of the auction. With respect to the asserted encroachment by the tennis court, plaintiffs claim that this potential defect was known at the time of the bid, and that the defendant's failure to disclose it constituted a misrepresentation.

Defendant takes the position that plaintiffs' use of terms such as misrepresentation and fraud shows that that part of the action relating to the tennis court sounds in tort and is outside the court's jurisdiction.

Defendant is correct that if the plaintiffs' claim is for damages for tortious conduct, the claim would have to be dismissed. 28 U.S.C. § 1491(a)(1). However, where there is a "tortious" breach of contract rather than a tort independent of the contract the action is properly before this court:

[T]he Tucker Act consistently has been interpreted to allow jurisdiction over claims which, although perhaps somewhat "tortious" in nature, are essentially based upon the breach of a contractual obligation. . . .

. . . . In order for this court to have jurisdiction over suits of this nature, there must be a direct connection between the Government's contractual obligation and the alleged tortious conduct.

*H.H.O., Inc. v. United States,* 7 Cl.Ct. 703, 706 (1985); *see also Claxton v. SBA,* 525 F.Supp. 777, 782 (S.D.Ga.1981) (where claim is "in substance" one based on breach of contract, it falls outside of the jurisdictional prerequisites of Federal Tort Claims Act). Here, however, despite plaintiffs' use of the term "misrepresentation" to characterize the auction, it is clear that their underlying claim sounds squarely in breach of the subsequent contract consisting of the sale documents, the bid, and the acceptance. *See* paragraph 15 of the General Terms of Sale, quoted. *Supra* p. 608.

■ To the extent that plaintiffs seek to assert some obligation to disclose the encumbrance independent of that contract, however, as suggested in oral argument, any such claim must of necessity either be grounded in tort or in a contract implied in

that the district court's June 24 order was not on the merits of plaintiffs' attempted intervention, the court notes that that order appears to be a final decision on the merits of plaintiffs' claim, which would generally bar subsequent action on that claim. *See Container Transp. Int'l, Inc. v. United States,* 199 Ct.Cl. 713, 717, 468 F.2d 926, 928 (1972). Application of that rule, though, may not be required if equity, public policy, or other considerations make it inappropriate. *See, e.g., Johnson v. United States,* 576 F.2d 606, 611 (5th Cir.1978), *aff'd on other grounds,* 631 F.2d 34 (5th Cir.1980), *cert. denied,* 451 U.S. 1018, 101 S.Ct. 3007, 69 L.Ed.2d 389 (1981); *Safir v. Gibson,* 432 F.2d 137, 143–44 (2d Cir.), *cert. denied,* 400 U.S. 942, 91 S.Ct. 241, 27 L.Ed.2d 246 (1970); *Red Lake Band v. United States,* 221 Ct.Cl. 325, 332–33, 607 F.2d 930, 934–35 (1979). Several considerations would mitigate against application of res judicata in this case. Specifically, plaintiffs' petitions to the district court were denied without trial or oral argument, in an order containing no findings or analysis in support of the conclusion.

That order was issued after the court had already determined that the entire purchase price should go to the United States, although plaintiffs had submitted their petition to intervene while that matter was still under consideration. Further, it is significant that the petitions were filed in district court only because of the defendant's motion to dismiss filed in this court. Plaintiffs have otherwise previously evidenced a clear intent to have their claim decided here. Finally, this court has ruled that plaintiffs' participation in the judicial sale provides insufficient basis for holding them bound as a party to the continuing district court proceedings after their bid was accepted.

10. Moreover, in view of the termination of the district court proceedings, this is not a situation where plaintiffs have actions pending simultaneously in courts with concurrent jurisdiction. Notwithstanding the nonapplicability of § 1500, principles of comity and judicial economy might warrant a different result if the district court action were still pending.

law. In either event this court would not have jurisdiction. *Merritt v. United States*, 267 U.S. 338, 45 S.Ct. 278, 69 L.Ed. 643 (1925) (contracts implied in law); *McCreery v. United States*, 161 Ct.Cl. 484 (1963) (tort claims); *South Louisiana Grain Services, Inc. v. United States*, 1 Cl.Ct. 281, 288 (1982) (tort claims). Even if the plaintiffs are advancing such a non-jurisdictional claim, however, they clearly have not abandoned their primary argument that the express contract was breached in two respects.

Accordingly, the court concludes that it has jurisdiction to proceed to examine defendant's assertion that plaintiffs have failed to state a claim upon which relief can be granted.

*Issue B.1. The "As Is" Sale*

█ Pursuant to RUSCC 56(c), summary judgment may be granted where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. The court concludes, as to the matter of the alleged failure to deliver a tennis court, that the standard of Rule 56(c) has been met.

In addition to the very clear statement in paragraph 3 of the General Terms of Sale, quoted above, that the property was being sold "as is" and without warranty, other provisions in that document and elsewhere should have put a prospective purchaser on notice of the lack of a guarantee. Specifically, paragraph 2 of the General Terms of Sale, "Description in Invitation for Bids" states:

> The descriptions of the property set forth in the Invitation for Bids are believed to be correct, but any error or omission shall not constitute grounds or reason for nonperformance of the contract of sale, or claim by purchaser for allowance, refund, or deduction from the purchase price.

Paragraph 5 of the Instructions to Bidders specifies:

> The failure of any bidder to inspect, or to be fully informed as to the condition of all or any portion of the property offered will not constitute ground for any claim or demand for adjustment or withdrawal of a bid.

As the Court of Claims has held in a case involving nearly identical warnings to prospective bidders, "[u]nder a long line of our decisions, plaintiffs have no case." *Varkell & Nutkis v. United States*, 167 Ct.Cl. 522, 524, 334 F.2d 653, 654 (1964) (per curiam) (citations omitted). "In such sales [as is sales where explicit warnings are given] the risk is on the purchaser." 167 Ct.Cl. at 525, 334 F.2d at 655. It is apparently true that inspection of the property being sold in *Varkell* would have revealed its defect while a physical inspection of the properties at issue here would not. Nevertheless, inspection of the county land records on the day of the sale would have done so.

Plaintiffs rely on numerous government contract cases [11] to support their assertion that the Government owed them a duty to disclose the existence of the encroachment. These cases all hold that if the United States possessed facts which were material to the bid and which the unsuspecting bidder neither knew nor should have known, a duty of disclosure arises. Assuming, arguendo, that GSA knew of the encroachment, plaintiffs had a reasonable opportunity to find out about it, as well. Where a prospective bidder "can reasonably be expected to seek and obtain the facts elsewhere," *H.N. Bailey & Associates v. United States*, 196 Ct.Cl. 166, 178, 449 F.2d 376, 383 (1971), "he must also refer to other materials which are available and about which he is told by the contract documents." *Flippin Materials Co. v. United States*, 160 Ct.Cl. 357, 367, 312 F.2d 408, 414 (1963) (footnote omitted), *quoted in*

---

11. *Umpqua River Navigation Co. v. Crescent City Harbor Dist.*, 618 F.2d 588 (9th Cir.1980); *H.N. Bailey & Assoc. v. United States*, 196 Ct.Cl. 166, 449 F.2d 376 (1971); *J.A. Jones Construction Co. v. United States*, 182 Ct.Cl. 615, 390 F.2d 886 (1968); *United Contractors v. United States*, 177 Ct.Cl. 151, 368 F.2d 585 (1966); *Helene Curtis Industries, Inc. v. United States*, 160 Ct.Cl. 437, 312 F.2d 774 (1963).

*Umpqua River Navigation Co. v. Crescent City Harbor District,* 618 F.2d 588, 595 (9th Cir.1980).

It is undisputed that the notice of encroachment was recorded at least 24 hours before the auction.[12] The title search conducted for plaintiffs after the sale but prior to the closing revealed it in the chain of title. The record contains no indication, however, that plaintiffs attempted to inspect the county land records, which are public records open to view, at any time prior to or specifically on the day of the sale. Given the conditions under which the sale was to be finalized, as to which plaintiffs should have been fully cognizant, the disclosure in the materials accompanying the sale of the location of the relevant land records,[13] the recordation of the notice of encroachment, and plaintiffs' failure to inspect those county records, the court finds that as a matter of law plaintiffs are barred from obtaining rescission or modification of their contract.

■■■■ In light of plaintiffs' lack of reasonable prudence in the face of the disclaimer that the property at issue was being sold "as is" and without warranty or guarantee, the court concludes that, even looking at the facts in a light most favorable to them, plaintiffs have not stated a claim upon which relief can be granted with respect to the encroachment.[14] Thus, in deciding the "as is" issue, the court need not examine defendant's argument that

plaintiffs waived their rights by accepting the GSA bid package.

*Issue B.2. The Property Damage Claim*

■■■■ In addition to seeking damages for the encroachment, discussed above, plaintiffs assert that the caretaker hired by GSA to safeguard the house and its furnishings failed to do so, and that several items were damaged or missing. Defendant contends that summary judgment must be granted because plaintiffs do not base their claim on a contractual relationship and because it constitutes a request for consequential damages, which are not recoverable against the United States. The court rejects these arguments and declines to grant summary judgment on this point.

With respect to the existence of a contract with the United States on this issue, the plaintiffs point to paragraph 7 of the General Terms of Sale, "Risk of Loss," which provides:

> As of the date of assumption of possession of the property or the date of conveyance, whichever occurs first, the successful bidder shall assume responsibility for care and handling and all risks of loss or damage to the property and have all obligations and liabilities of ownership.

In paragraph 10 of their complaint, plaintiffs assert that a "representative of the defendant advised plaintiffs that the defendant would maintain the property *pursuant to the terms and conditions of the*

---

**12.** The court notes that the parties have not disputed the accuracy of the notice, but that no record evidence proves that the encroachment actually exists as set forth in the notice.

**13.** The record does not clearly show how long before the sale the plot numbers were made available. However, such information could have been furnished by GSA on request, as stated in paragraph 5 of the Instructions To Bidders, and would have been available at the records office.

**14.** A purchaser has constructive knowledge of all information in the land records concerning the property he is purchasing. Where information affecting title to land is recorded, a subsequent purchaser cannot take priority over it, whether he has actual notice of it or not. In-

deed, the purchaser is "charged with notice of what a proper inquiry would have disclosed." *Hughes v. North Carolina State Highway Com'n,* 275 N.C. 121, 165 S.E.2d 321, 327 (N.C.1969); *see Trigo v. Puerto Rico,* 112 F.2d 493, 495 (1st Cir.1940); *United States v. Ryan,* 124 F.Supp. 1, 5 (D.Minn.1954); *cf. Love v. Elliot,* 350 So.2d 93 (Fla.App.1977). Ms. Archer's claim, which appears to have been filed in accordance with applicable state statutes, *see* Fla.Stat. §§ 712.05, 712.06 (1969), was recorded in the chain of title. Plaintiffs, therefore, were charged with knowledge of it and bought the property subject to it. *See* 5 H. Tiffany, Real Property § 1265 (3d ed. 1939); J. Cribbet, Principles of the Law of Property § 6D (2d ed. 1975).

*sale* until the closing." (Emphasis added.) In relevant respect, defendant's answer admitted this allegation, and defendant has not argued that this representative was unauthorized. Defendant argues, however, that the "Risk of Loss" provision does not explicitly state that the United States assumed the risk of loss or damage prior to conveyance. In view of its admission, the court finds this position to be untenable. Plainly the risk of loss or damage had to rest with either the GSA or the purchasers prior to conveyance, and the only fair implication of the language is that it lay with the defendant. This construction is supported by the August 12, 1985 letter of GSA to plaintiffs, in which the Office of Regional Counsel stated that "the right to file claim will survive the property closing."

With respect to the question of whether the damages are consequential, this court has said that such damages are those which are not "the natural and probable consequences of the alleged breach" of contract. *H.H.O., Inc.,* 7 Cl. Ct. at 707. Without deciding at this stage of the proceedings the relationship between this limitation and a risk of loss provision, it nevertheless appears from the record as it now stands that damages were sustained after the date of the auction but prior to the date of conveyance. The court cannot find that any damages allegedly so accruing are not, as a matter of law, reasonably foreseeable. *See DeBarros v. United States,* 5 Cl.Ct. 391 (1984). Plaintiffs' submissions, given the current state of the record, are sufficient to withstand the motion for summary judgment as currently presented. Moreover, in light of paragraph 7 of the General Terms of Sale, the court holds that defendant's waiver argument, to the extent it may be applicable to this claim, is not meritorious.

Thus, defendant's motion for summary judgment in this respect is denied.

## CONCLUSION

For the reasons stated, defendant's motion is granted and denied in part. Accordingly,

IT IS ORDERED, as follows:

1. Defendant's motion to dismiss for lack of jurisdiction is denied.

2. The defendant's motion for summary judgment concerning the encroachment claim is granted and that claim is dismissed.

3. Defendant's motion for summary judgment concerning the property damage claim is denied.

4. The parties shall file a Joint Preliminary Status Report on the remaining issues by September 15, 1986.